477 So.2d 157 (1985)
STATE of Louisiana
v.
Sam BUIE and Wilbert Diggs.
No. KA 85 0217.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*159 William M. Quin, Amite, for plaintiff-appellee.
Andre Coudrain, Hammond, for defendant-appellant Sam Buie.
Barbara Cole, Hammond, for defendant-appellant Wilbert Diggs.
Before LOTTINGER, COLE and CRAIN, JJ.
LOTTINGER, Judge.
Defendants, Wilbert Diggs and Sam Buie,[1] were each charged by a single bill of *160 information with two counts of armed robbery in violation of La.R.S. 14:64. Defendants pled not guilty and were tried by jury. Buie was convicted of armed robbery on both counts, and Diggs was found guilty of armed robbery on count one and guilty on count two of simple robbery, a responsive verdict. See La.Code Crim.P. art. 814(A)(22). Buie was sentenced to serve consecutive sentences of thirty-five years at hard labor on count one and seven years at hard labor on count two, with both sentences to be served without benefit of probation, parole, or suspension of sentence. Diggs was sentenced to serve consecutive sentences of seven years at hard labor for simple robbery and thirty-five years at hard labor without benefit of probation, parole, or suspension of sentence for armed robbery.
Both defendants appeal their convictions and sentences, arguing in their briefs six assignments of error, which correspond to the six assignments of error formally urged of record by Buie. Diggs urged only three assignments of error of record. His three assignments correspond roughly to assignment numbers 1, 2 and 6 by Buie. However, Diggs argues in brief all six assignments of error urged of record by Buie.
The issue of whether or not assignments of error urged by one co-defendant may be presumed to have been urged by another was discussed, but not decided, in State v. Arbuthnot, 367 So.2d 296 (La.1979). Likewise, without deciding the issue, we will assume that assignments of error urged by Buie are available to Diggs.[2]

FACTS
On May 8, 1984, an alarm from Central Progressive Bank was received in the office of Sammy Broyles, Kentwood Chief of Police. He proceeded to the bank and was advised by the bank's manager that robberies had just been committed by two black males.
Shortly after the occurrence of the robberies, Kentwood policeman James Rhymes received a call to investigate the crimes. He proceeded to the bank, was informed of what occurred, and then began trying to locate the offenders. Bank personnel identified the robbers as two small black males. Rhymes received a description of a blue and a yellow vehicle as possibly involved in the robberies. In the course of his investigation, Rhymes saw a black and yellow Cadillac parked in the 13th Street area in front of Shirley Hall's house. Four or five persons were getting inside the vehicle, which fit the description of the vehicle possibly involved in the commission of the robberies. Since he was alone in his vehicle, Rhymes positioned his own vehicle at the end of the street and waited for the Cadillac to proceed. When it did, he got behind it. James Hall, in the back seat, turned around to look at Rhymes, who recognized him. After Hall turned back around, the other two men in the back seat continuously turned around, looking at Rhymes. After following the vehicle several blocks, Rhymes stopped the vehicle, approached it, and asked the driver to step out. The driver, Oliver Ross, informed the officer that, although he did not know them, he had been paid by the three men in the back seat to drive them to Hammond, Louisiana. Rhymes then moved the driver out of the way, raised the car seat forward and noticed a paper bag on the back floor board and a plastic shopping bag. The top of the paper bag was open. It was almost filled with currency, and on top was a Central Progressive Bank deposit receipt. Two hundred fifty dollars in bait money identified as belonging to the bank, was found among the currency in the paper bag. Law enforcement officers also recovered the guns used in the robberies. Defendants were arrested and advised of their constitutional rights.

ASSIGNMENT OF ERROR NO. 1
By means of this assignment, defendants contend that the trial court erred in overruling *161 their in-court identifications on the basis that the identifications were suggestive, not reliable, and violative of their rights to due process of law. In regard to this assignment, in Buie's brief, reference is to identification of him by the bank's manager, Gary Travis; and in Diggs' brief, reference is to identification of him by bank tellers, Tammy Cutrer and Donna Givens.
The bill of information charged defendants in count one with the armed robbery of Gary Travis, Phyllis Miller, Tammy Cutrer, and Donna Givens. In count two, defendants were charged with the armed robbery of Gary Travis.
The robberies occurred between about 1:15-1:25 p.m. on the afternoon of May 8, 1984. The trial was conducted on October 17-19, 1984. At the time of the commission of the crimes, no customers were in the bank. The only persons present, other than the robbers, were the three bank employees who made in-court identifications and a fourth bank employee, Phyllis Miller, who could not identify either of the robbers.
Tammy Cutrer, a "drive up teller" at the bank, testified that she was standing in the middle of the bank when she first became aware that a robbery was in progress. One of the robbers came in through the door and jumped over the counter. He had a stocking over his face and was holding a gun, pointing it at her and other bank employees. The robber handed Tammy a grocery bag and told her to give him all of her money. After she did so, he tied her hands and pushed her against a desk. She just laid there. The robber was standing in front of her, and she looked at his face.
Tammy further testified that the robber was in her and Donna Givens' area for 3 or 4 minutes. She stated that the stocking worn by the robber was a clear lady's stocking through which she could see his face. It did not distort his features to the extent that she could not identify him.
Tammy was asked to look at the counsel table and indicate whether or not she saw the robber. She identified Diggs. When asked if there was any question in her mind that Diggs was the robber, she responded, "No, sir, I know it is."
Donna Givens, a bank teller, was at her window when one of the robbers entered through the door and jumped over the counter. He was holding a gun. She fell on the floor and did not get up during the course of the robbery. The robber grabbed her hands and tied them behind her back.
When the robber came through the door, she looked straight at his face. He was wearing pantyhose over his face; eyeholes were cut out. The stocking did not distort his face. She testified that she did get a sufficient look at the robber to make an identification. She made an in-court identification of Diggs as the robber. She said there was no question in her mind.
Gary Travis, vice-president and manager of the bank, was seated in front of a desk in the lobby, working with another employee, Phyllis Miller, when one of the robbers came through the door. The robber went over the counter and told everyone not to move, that it was a "hold up".
A second robber entered and pointed a gun at Gary and Phyllis. The robber told Phyllis to get the money. Gary stayed seated until the robber told him to go with her. They went behind the teller cages where the robber gave Phyllis a bag and told her to fill it with all the money. The robber told Gary to give him his wallet. Gary took his own money out of his money clip and dropped it in the bag. Gary testified that the robbery lasted about five to eight minutes.
Gary Travis made an in-court identification of Buie as the robber. He testified that he knew the bank's camera was not working and, therefore, he "had to eyeball to eyeball." He further stated that the stocking over the robber's face did not prevent him from observing the robber sufficiently to make an identification because the front of the robber's face was not completely covered. Although the robber wore sun glasses, Gary stated he was close enough to see through them. He testified *162 there was no question in his mind that Buie was the robber.
Each of the defendants asks this Court to consider the circumstances surrounding his in-court identification. Considering that he was seated at a most conspicuous location, the defense table, at the time of identification and he was not placed in any sort of lineup of men of similar physical characteristics. Defendants argue that this Court should find that the "one-on-one" confrontation under these circumstances was impermissibly suggestive, unreliable, and violative of their rights to due process of law.
In State v. Sensley, 460 So.2d 692 (La. App. 1st Cir.1984), writ denied, 464 So.2d 1374 (La.1985), this Court concluded the fact that defendant was the only black man seated at counsel table does not render the in-court identification inadmissible, although this factor is one to be considered by the jury in weighing the testimony of the in-court identification. See State v. Daniels, 326 So.2d 340 (La.1976), cert. denied, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). The Louisiana Supreme Court in State v. Drew, 360 So.2d 500 (La.1978) stated the following:
Defendant had ample opportunity to extensively cross-examine the victim, a sufficient remedy to any suggestion inherent in the in-court identification process. Hence, the trial judge did not err in overruling defendant's objection to the in-court identification as conducted. [citations omitted.] See also: State v. Sensley, supra.
In the instant case defendants assert that this case should be compared to cases wherein courts have examined the reliability of an in-court identification based upon some type of lineup conducted after the crime. Herein, the record does not disclose that any pretrial lineup was ever conducted nor that either defendant filed a motion for an in-court identification lineup with other men similarly situated. In any event, an accused has no constitutional or statutory right to a pretrial or in-court lineup. Sensley, supra.
The in-court identifications at issue herein were positive and unequivocal. Defendants had ample opportunity to and did extensively cross-examine each of the witnesses concerning his or her identification of the respective defendant. This cross-examination was sufficient to remedy any suggestion inherent in the in-court identification procedure. See Sensley, supra.
Where the key issue is defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Long, 408 So.2d 1221 (La.1982); State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984).
In making a determination of the likelihood of misidentification of a defendant, in which an out-of-court identification had been made, the evidence must be weighed in light of the factors indicating reliability as set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and restated in State v. Clark, 437 So.2d 879 (La.App. 2nd Cir. 1983), writ denied, 442 So.2d 460 (La.1983), where the court held that an identification procedure is reliable if the following factors are met: "1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the witness' degree of certainty; 5) the time between the crime and the confrontation". State v. Andrews, 451 So.2d 175, 178 (La.App. 1st Cir.1984), writ denied, 457 So.2d 17 (La. 1984). Moreover, even applying the Manson factors to the instant in-court identifications, clearly the identifications were based upon reliable testimony with no significant chance of misidentification.
Therefore, this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
By means of assignment of error number 2, defendants assert that the evidence was insufficient to convict on each count. By assignment of error number 3, defendants *163 assert that the trial court erred in denying their motions for new trial, for the reason that the jury's verdict was contrary to the evidence presented and the law, and in the interest of justice a new trial should have been allowed.
In reference to assignment of error number 3, defendants rely upon their arguments in assignment numbers 1 and 2. Having previously found no merit in assignment number 1, their argument in support of assignment number 3 now rests upon a determination of assignment number 2.
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal under La.Code Crim.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983).
Although the record does not indicate that either defendant in the instant case made such a motion, a reviewing court, in spite of defendants' failure to proceed properly, must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 560 (1979), now codified in La.Code Crim.P. art. 821; State v. Bell, 442 So.2d 715 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1244 (La.1984).
The standard established by La.Code Crim.P. art. 821 is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. La. Code Crim.P. art. 821; State v. Walker, 447 So.2d 54 (La.App. 1st Cir.1984).
In briefs, defendants' sole argument regarding the sufficiency of evidence is that, without the in-court identifications of them as the robbers, the state's entire case rests upon circumstantial evidence. Having found no merit in defendants' argument against the identifications, this contention fails.
Moreover, we find the evidence herein sufficient to uphold the convictions under the standard provided by La.Code Crim.P. art. 821.
We have previously set forth the essentials of the state's case regarding the apprehension of defendants, the robberies, and the in-court identifications made by the victims. Additionally, the state presented the testimony of Shirley Hall.
Shirley Hall, the sister-in-law of James Hall, testified that she initially saw James on the day of the robberies at about 8:00 a.m. when he came to her house. He came back shortly before "dinner", and then later the same day he returned at about 1:50 p.m., along with defendants. Shirley distinctly remembered the time, 1:50 p.m., because she was at that time watching the television show "Capitol", and that day's episode of the show was about to conclude. She also had looked at the clock as the three men entered her home. Shirley testified that Diggs had a brown paper bag with him and so did Buie. Defendants went into Shirley's bathroom, taking the bags with them. Prior to their use of the bathroom, Shirley had cleaned the bathroom and had emptied her trash can for garbage pick-up on the day in question. Hall, Diggs and Buie stayed at Shirley's house about ten minutes before leaving.
Policeman James Rhymes, at about 3:40 p.m. on the date of the robberies, along with two other officers, went to Shirley Hall's home to continue their investigation. Rhymes, pursuant to a permission to search, recovered two pieces of cloth from the trash can in Shirley's bathroom and a torn paper bag which was found on the floor of the bathroom. The torn bag contained fingerprints positively identified as those of Buie.
Gary Travis identified the torn paper bag as looking just like the paper bag which burst during the robbery and which the robber took with him as he left the bank. He also identified the strips of material as appearing to be the same type as that used to tie-up Tammy Cutrer and Donna Givens.
The only evidence presented on behalf of the defendants consisted of several character *164 witnesses and the testimony of Diggs. Diggs took the stand in his own defense, and denied that he robbed the bank. He testified that, on the day of the robberies, he was returning to New Orleans from Liberty, Mississippi. He testified that they caught several rides, during one of which the police stopped the car and took them to jail. He testified that he and Buie were together the night before he was arrested. He claimed that he and Buie had hitchhiked to Liberty the night before, getting there about 11:00 p.m.
The jury's verdict indicates that after considering the credibility of the witnesses and weighing the evidence, it accepted the testimony of the state's witnesses and rejected that of Diggs.
Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. A determination of the weight of the evidence is a question of fact. This Court has no appellate jurisdiction to review questions of fact in criminal cases. This Court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidencethat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Norman, 448 So.2d 246 (La.App. 1st Cir.1984), reversed in part on other grounds, 452 So.2d 1178 (La.1984).
Positive identification by only one witness is sufficient evidence to support the jury's conviction of a defendant. State v. Williams, 458 So.2d 1315 (La.App. 1st Cir. 1984), writ denied, 463 So.2d 1317 (La. 1985).
For the foregoing reasons these assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment, defendants assert that their being sentenced by the trial court was improper, for the reason that there was no twenty-four hour delay from the denial of their motions for new trial before sentencing, as required by La.Code Crim.P. art. 873.
The record discloses that the trial court did not wait the required twenty-four hours after denial of either defendant's motion for new trial. The record also does not indicate that either defendant expressly waived that waiting period. However, neither defendant argues or shows that he was actually prejudiced by the failure of the trial court to observe the waiting period. Such a failure on the part of the trial court is harmless error where the defendant does not show actual prejudice. See State v. Mason, 447 So.2d 1134 (La.App. 1st Cir.1984).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment, defendants assert that the trial court erred in considering and inquiring into specific circumstances and allegations of prior crimes resulting in prior convictions when it sentenced them. Defendants assert that they were not apprised of the trial court's intent to use prior criminal activity as a consideration in sentencing and were given no notice of the derogatory information.
"Prior criminal activity which the court may consider when sentencing a defendant is not limited to prior convictions". State v. Johnson, 446 So.2d 1371, 1375 (La.App. 1st Cir.1984), writ denied, 449 So.2d 1347 (La.1984). A defendant has a right to present circumstances which mitigate against imposition of a severe sentence and rebut misinformation which the trial court may rely upon in its sentencing decision. State v. Ray, 423 So.2d 1116 (La.1982); State v. Cox, 369 So.2d 118 (La. 1979). A defendant may be considered to have waived the opportunity to rebut information in a presentence report where the record does not reflect, nor does the defendant contend, that any request was made to rebut any information in the presentence *165 report. State v. Washington, 414 So.2d 313 (La.1982).
While defendant Buie concedes that he was afforded an opportunity to speak in mitigation and the record indicates he did in fact utilize that opportunity, Diggs asserts that he was not afforded such an opportunity, although the record does not indicate that he or his counsel made and were denied such a request. Under such circumstances, the defendant is deemed to have waived his right to speak in mitigation. Certainly he has not been denied the right to speak in mitigation under these circumstances. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Washington, supra.
Defendants' assertions that they were not apprised of the trial court's intent to use prior criminal activity as a consideration in sentencing and that they were not given notice of the derogatory information also lacks merit. At the conclusion of trial, the trial court ordered a presentence report. Thus, defendants cannot now contend that they were not aware of the possible consideration of prior criminal activity as a consideration in sentencing. Moreover, neither defendant asserts the report contained false information. Under such circumstances, defendants have failed to state a meritorious claim. See State v. Grey, 408 So.2d 1239 (La.1982); State v. Brown, 440 So.2d 994 (La.App. 3rd Cir. 1983), writ denied, 444 So.2d 120 (La.1984).
For the foregoing reasons this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6
By means of this assignment, defendants assert that the sentence on each count was excessive, for the reason that the trial judge failed to consider the testimony presented at trial of defendants' good character and reputation.
In State v. Benton, 453 So.2d 993 (La.App. 1st Cir.1984), writ denied, 457 So.2d 17 (La.1984), we noted that La.Code Crim.P. art 894.1 requires the trial court to state for the record the considerations and factual basis for imposing the given sentence. However, it need not articulate every aggravating and mitigating circumstance. The record need only reflect that the trial judge adequately considered the guidelines given in this article. State v. Parish, 429 So.2d 442 (La.1983). Even when the trial court has not complied with La.Code Crim.P. art. 894.1, this Court need not remand the case for resentencing, unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Davis, 448 So.2d 645 (La.1984).
A sentence imposed without the assignment of reasons will not be set aside automatically on appeal, but will be set aside for resentencing only if the record is inadequate or if the record clearly indicates the sentence is excessive. State v. Wimberly, 414 So.2d 666 (La.1982).
We, therefore, turn to an examination of the sentences as allegedly excessive.
A trial judge's reasons in imposing sentence, as required by La.Code Crim.P. art. 894.1, are an important aid to this Court when reviewing a sentence alleged to be excessive. State v. Wade, 442 So.2d 681 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1245 (La.1984).
In State v. Stampley, 457 So.2d 1238, 1240 (La.App. 1st Cir.1984) this Court stated that under Article 894.1, the trial judge should consider three basic factors before imposing a prison sentence: "(1) that there is an undue risk that the defendant will commit another crime during the period of suspension or probation, (2) that the defendant is in need of services of a custodial environment provided most effectively by a commitment to an institution, and (3) that a lesser sentence would deprecate the seriousness of the crime. The trial judge should also consider and accord some weight to other factors, such as the defendant's prior criminal record, the seriousness of the offense, the defendant's personal history and his potential for rehabilitation, though he need not state them all for the record. See State v. Knox, 425 *166 So.2d 707 (La.1982); State v. Lang, 430 So.2d 1239 (La.App. 1st Cir.1983). But he must state for the record those considerations taken into account and the factual bases supporting his sentencing choice".
Maximum sentences are imposed in the most serious violations of the described offense and for the worst offender. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Jones, 398 So.2d 1049 (La.1981).
The imposition of consecutive sentences, which requires particular justification when the crimes arise from a single course of conduct, is justified when the offender poses an unusual risk to public safety due to his past conduct or repeated criminality. State v. Lewis, 416 So.2d 921 (La.1982); State v. Carter, 412 So.2d 540 (La.1982).
The maximum possible sentence for armed robbery is ninety-nine years at hard labor without benefit of probation, parole, or suspension of sentence. La.R.S. 14:64(B). Simple robbery carries a possible penalty of a fine of not more than three thousand dollars, imprisonment with or without hard labor for not more than seven years, or both. La.R.S. 14:65(B).
Buie received consecutive sentences of thirty-five years and seven years, at hard labor without benefit of probation, parole, or suspension of sentence for his two armed robbery convictions. In sentencing Buie, the trial court noted that he had pled guilty to a previous armed robbery in which his co-perpetrator had shot a victim. The trial court stated that it had no doubt that Buie would commit another crime and that a lesser sentence would deprecate the seriousness of the crimes.
Diggs received consecutive sentences of thirty-five years at hard labor without benefit of probation, parole, or suspension of sentence for his armed robbery conviction and seven years at hard labor for his simple robbery conviction. In sentencing Diggs, the trial court noted several prior convictions: two for simple battery, one for receiving stolen things, and one for contempt of court. The trial court further noted that a prior probation had been revoked and that another charge of simple battery was pending against Diggs. It further noted arrests on various other charges. The trial court found that Diggs was likely to commit another crime and that a lesser sentence would deprecate the seriousness of the offenses.
In the instant case, Diggs and Buie committed an armed robbery in a bank. Guns were pointed at the victims. While none of the victims were seriously injured, their lives were certainly endangered. During the course of the robberies, Buie ordered Gary Travis to lie down and threatened to use his gun if Gary did not comply. Gary then complied.
The sentences imposed on both defendants are not apparently severe in relation to defendants or the offenses committed. See State v. Benton, supra. Clearly, both defendants pose an unusual risk to public safety due to their past conduct of repeated criminality. See State v. Lewis, supra; State v. Carter, supra. The record herein does not indicate that the sentences imposed are excessive.
Therefore, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Proceedings against a third accused, James Hall, were severed from those against defendants herein.
[2] With regard to Assignment of Error no. 4, the alleged error is noticeable as error patent, in any event. See La.Code Crim.P. arts. 873 and 920(2).