722 So.2d 63 (1998)
STATE of Louisiana
v.
Kenneth SPRADLEY.
No. 97 KA 2801.
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
Rehearing Denied December 16, 1998.
*66 Ali Z. Shields, Office of District Attorney, Plaquemine, for State of Louisiana.
Edward N. Engolio, Plaquemine, for Kenneth Spradley.
Before LeBLANC, FOGG and PARRO, JJ.
LeBLANC, J.
The defendant, Kenneth Spradley, was charged by bill of information with two counts of distribution of cocaine, violations of La. R.S. 40:967(A)(1), two counts of distribution of cocaine as a principal, violations of La. R.S. 40:967(A)(1) and 14:24, and one count of distribution of counterfeit cocaine as a principal, a violation of La. R.S. 40:967(A)(2) and 14:24. Subsequently, one count of distribution of cocaine as a principal (count three) and one count of distribution of counterfeit cocaine as a principal (count five) were notprossed. The defendant pled not guilty to the remaining counts and, after trial by jury, was found guilty of two counts of distribution of cocaine, and one count of attempted distribution of cocaine. The defendant was sentenced to thirty years at hard labor on each conviction of distribution of cocaine and fifteen years at hard labor for his conviction of attempted distribution of cocaine. The sentences were ordered to be served consecutively. The defendant has appealed, urging seven assignments of error.

FACTS:
On February 17, 1994, in Iberville Parish, the defendant distributed crack cocaine to an undercover officer. On September 15, 1994, in Iberville Parish, the defendant attempted to distribute cocaine to an undercover officer. Again, on September 15, 1994, in Iberville Parish, the defendant distributed cocaine to an undercover officer. All three transactions were videotaped.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE:
In his first assignment of error, the defendant contends that the trial court erred in denying his request to employ private counsel and, thus, he was denied his constitutional right to counsel and due process of law. In his second assignment of error, the defendant contends that, although the court assigned a public defender to his case, the record fails to reflect any participation in the trial by a qualified defense attorney, thus, the defendant had no assistance of counsel. In assignment of error number three, the defendant contends that being forced to represent himself amounted to ineffective counsel. In his brief to this court, the defendant argues that the trial court erred in denying him a continuance in order to allow him to hire private counsel. He contends that although the venire was present, it could have been used on one of the other pending trials. According to the defendant, he lost confidence in his defense counsel because he had been in prison for seventeen months prior to the trial and had only conversed with the public defender on two occasions, one of which was to offer him a plea bargain of fifteen years. He further contends that the Public defenders expressed an unwillingness to represent the defendant, thus forcing him to be represented by someone who did not want to represent him, which amounted to a gross denial of effective assistance of counsel.
*67 He further contends that the public defender who was appointed as his assistant did not help him in any way.
Initially, we note that a motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based. La.Code Crim. P. art. 707. The granting or denial of a motion for continuance rests within the sound discretion of the trial court, and its ruling shall not be disturbed on appeal absent a showing of a clear abuse of discretion. State v. Spencer, 444 So.2d 354, 356 (La.App. 1st Cir.1983), writ denied, 488 So.2d 694 (La.1986). Whether refusal of a motion for continuance is justified depends on the circumstances of the case. Generally, the denial of a motion for continuance is not reversible absent a showing of specific prejudice. State v. Bourque, 622 So.2d 198, 224 (La.1993), cert. denied sub nom, Bourque v. Louisiana, ___ U.S. ___, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998), overruled on other grounds sub nom., State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16.
An oral motion for continuance leaves nothing for review on appeal. However, where the occurrences that allegedly make the continuance necessary arise unexpectedly, and defense counsel had no opportunity to prepare a written motion, an appellate court may review the denial. State v. Francis, 597 So.2d 55, 58 (La.App. 1st Cir.1992).
Presumably, the defendant was aware of the problems he had with his attorneys prior to the beginning of trial and he had sufficient opportunity to file a written motion for a continuance. Nevertheless, even assuming that the failure to file a written motion could be excused due to some misunderstanding, lack of communication, or disagreement on strategy between the defendant and the public defender, for the reasons which follow, we conclude that the trial court did not abuse its discretion in denying the defendant's oral motion for a continuance.
The right to counsel cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Seiss, 428 So.2d 444, 447 (La.1983). While the right to counsel of choice in a criminal trial is guaranteed by the United States and the Louisiana Constitutions, there is no constitutional right to make a new choice on the date a trial is scheduled to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. State v. Leggett, 363 So.2d 434, 436 (La.1978). The right to counsel of choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. State v. Lee, 364 So.2d 1024, 1028 (La.1978). Once the day of trial has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial court. The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for a continuance made on the day of trial when the defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel. State v. Leggett, 363 So.2d at 436.
According to the minutes, on July 6, 1995[1], the defendant was informed of his right to an attorney. The defendant stated that he did not have an attorney and could not afford to hire one. The court then appointed the indigent defender's office to represent him. The defendant's trial did not start until March 12, 1997. On the date that trial was to start, the defendant was present in court with three[2] defense attorneys appointed by the Indigent Defender Board (IDB). The defendant asked for a continuance of the trial in order to hire his own attorney; the trial court denied the motion after two defense attorneys addressed the court and the prosecutor argued that the defendant had had sufficient time to retain private counsel. Subsequently, during voir dire, the defendant made a motion that the court allow him to represent himself. The court granted the defendant's motion allowing him to represent himself *68 with the assistance of an attorney from the IDB.
Concerning the defendant's claim of ineffective assistance of counsel, we note that a claim of ineffective counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1st Cir.1989), writs denied, 559 So.2d 1374-75 (La.1990) and 604 So.2d 1297 (La.1992). However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172, 174 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
An accused who chooses to represent himself is precluded from complaining on appeal that his self-representation was inadequate. State v. Battieste, 597 So.2d 508, 515 (La.App. 1st Cir.), writ granted in part and judgment vacated in part on other grounds, 604 So.2d 960 (La.1992). Although a defendant does not have a constitutional right to be both represented and representative, the district court has the discretion to appoint an attorney to assist a pro se defendant. State v. Dupre, 500 So.2d 873, 877 (La.App. 1st Cir.1986), writ denied, 505 So.2d 55 (La.1987). When the trial court allows this kind of arrangement, the defendant acts as his only legal representative. The legal counsel that is appointed does not represent the defendant; he only advises him. Because the court appointed attorney is only acting as an advisor, the accused is abandoning his right to be represented by counsel. At the same time he is exercising his right to self-representation. Therefore, when an attorney is appointed as an advisor, the accused must knowingly abandon his right to be represented by counsel. State v. Dupre 500 So.2d at 877.
In the instant case, after voir dire had begun, the defendant requested that he represent himself during the trial and the IDB counsel assist him. The court explained to the defendant that the IDB counsel had years of expertise and that it would be an extreme detriment to the defendant's case for the court to allow the defendant to represent himself. The defendant indicated that he understood. The court admonished the defendant that he would be held to all rules of evidence and that he would be expected to act in a proper and professional manner. The judge explained that he was there to see that the defendant's trial was fair and impartial. The court explained that the IDB counsel was going to be in court at all times and able to assist him; however, the court explained that the attorney was only going to be present to give solicited advice and was not going to object or participate in the trial *69 in any other way. The court did inform the defendant that any time during the trial the defendant could ask the IDB counsel to take over the trial and that counsel would do so, but that at that point the defendant could no longer act as counsel. The defendant indicated that he understood and that he wanted to represent himself.
Upon review of the record, we find that the defendant knowingly abandoned his right to be represented by counsel. The court clearly explained to the defendant that he would be representing himself and that the IDB attorney would only be present for any assistance the defendant might need as requested by the defendant. However, the court made it clear that the attorney would not participate in the trial. The court explained to the defendant the pitfalls of self-representation and encouraged the defendant to allow the IDB attorney to represent him. The defendant indicated that he understood and wanted to represent himself. The defendant sufficiently was made aware of the dangers and disadvantages of representing himself, and the record established that the defendant's choice was knowingly and voluntarily made. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Considering the above, the defendant's claim of ineffective assistance of counsel is without merit.
Additionally, although the defendant claims that the IDB attorney appointed as his assistant did nothing to assist him at trial, this is not borne out by the record. Furthermore, this matter would be more properly raised by application for post conviction relief. These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
In his fourth assignment of error, the defendant contends that the chain of custody of a sealed envelope, purportedly containing cocaine, was broken. In his brief to this court, the defendant argues that testimony of two witnesses indicate that the envelopes presented at trial which contained the cocaine had been opened by someone other than the analyst who analyzed the items in the envelopes and testified as to the contents. He claims that the evidence envelopes should not have been opened prior to the analyst's testimony.
Initially, we note that the state claims in its brief to this court that the defendant failed to object properly to the introduction of the evidence and thus, cannot now raise this claim on appeal. However, during the testimony of Iberville Parish Sheriff's Officer Gerald Jenkins, he was asked to open one of the evidence envelopes, and the defendant objected based on improper chain of custody. Therefore, the defendant's objection was sufficient to preserve the issue for appeal and we will review the issue.
To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. A sufficient foundation for the introduction of demonstrative evidence is laid if the evidence establishes that it is more probable than not that the object is the one connected to the case. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Glynn, 94-0332, pp. 7-8 (La.App. 1st Cir.4/7/95), 653 So.2d 1288, 1297, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464. A continuous chain of custody need not be established if the evidence as a whole establishes more probably than not that the object introduced is the same as the object originally seized by police officers. State v. McCabe, 420 So.2d 955, 960 (La.1982); State v. Pooler, 96-1794, p. 41 (La.App. 1st Cir.5/9/97), 696 So.2d 22, 50, writ denied, 97-1470 (La.11/14/97), 703 So.2d 1288.
The defendant contends that the testimony of the witnesses indicates that the envelopes were opened by witnesses other than the people who analyzed the evidence in *70 the envelopes. However, during the defendant's cross-examination of Iberville Parish Sheriff's Officer Neal Noel, who was the case agent for two of the charges against the defendant[3], the defendant himself opened the three exhibit envelopes (with the court's approval) to show the jury the rocks of crack cocaine. During the state's direct examination of Noel, he identified two envelopes as being the envelopes in which he placed the evidence in question, designated with the defendant's name, sealed with tape, secured in the evidence safe until transported to the state police crime lab, and then resecured in the safe after release from the crime lab until the trial. After showing the evidence to the jury, the court ordered the clerk to place the evidence back in the envelopes and seal them with scotch tape.
Subsequently, Orian Gulotta, the Plaquemine City Police evidence officer at the time the crimes were committed, identified the envelopes and lab forms. According to Gulotta, he gave the evidence envelopes to Iberville Parish Sheriff's Officer Jeff Zettlemoyer to take to the crime lab. Subsequently, Zettlemoyer returned the envelopes to him and he secured them in the safe. According to Fulotta, the envelopes were sealed and there was no evidence of tampering. Zettlemoyer testified that he picked up the envelope's and transported them to the crime lab. When the crime lab completed the testing on the evidence, he retrieved the envelopes from the lab and returned them to Gulotta. According to Zettlemoyer, the envelopes were sealed.
Howard Pentes and Robert DesBordes, both forensic scientists with the Louisiana State Police Crime Lab, testified that the evidence in the envelopes that they tested was cocaine. However, because the envelopes had been opened prior to their testimony, they could not be positive that the evidence in the envelopes were sealed when they received them and after the testing they resealed the envelopes.
Cathy Dupont, Deputy Clerk of court for Iberville Parish, testified that she sealed the envelopes with scotch tape after they were opened in court. According to Dupont, there was no damage to the envelopes before they were opened and they did not appear to be have been opened or tampered with previously.
The evidence was identified at trial and considering all the testimony given at trial regarding the chain of custody of the evidence, it is more likely than not that the objects were the ones connected to the case. Nonetheless, any defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Moreover, the defendant himself asked that the envelopes be opened and the evidence shown to the jury prior to the testimony of the witnesses who analyzed the evidence. Considering the above, we find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER FIVE:
In his fifth assignment of error, the defendant contends that the trial court erred in allowing the state to introduce a copy of the videotapes of the crime. He contends that the explanations regarding the state's failure to introduce the original were insufficient and unsatisfactory. In his brief to this court, he contends that no testimony was given to explain the absence of the original videotapes. Although he admits that he failed to properly object to the admission of the tapes, he claims that he was denied a fair trial because copies of the tapes were used.
Initially, we note that the defendant failed to object to the introduction of the videotapes of the drug transactions into evidence. Therefore, he is precluded from raising this argument on appeal. See La.Code Evid. art. 103(A)(1) & La.Code Crim. P. art. 841. Moreover, after reviewing the introduction of the videotapes into evidence, we find that the defendant's assignment of error lacks merit.
La.Code Evid. art. 1003, provides:
A duplicate is admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of *71 the original; (2) In the circumstances it would be unfair to admit the duplicate in lieu of the original; or (3) The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.
Where a mechanical reproduction of the original is offered into evidence, and is the substantial equivalent of the original, admission over objection is reversible error only upon a showing that the content of the purported copy does not accurately reflect that of the original. State v. Vincent, 338 So.2d 1376, 1381 (La.1976); State v. Hensley, 608 So.2d 664, 668 (La.App. 3rd Cir.1992), writ denied, 613 So.2d 972 (La.1993).
Detective Tim Collins of the Plaquemine City Police Department testified that when making videotapes of undercover drug buys, the same tape is used the entire night and a number of transactions are recorded on one tape. Thereafter, each individual transaction is put on a separate tape. Collins stated that he brought the tape[s] of the defendant's transactions to court and verified that the tapes were accurate depictions of the original tape recordings. Iberville Parish Sheriff's Officer Gerald Jenkins confirmed Collins' testimony. The defendant has made no showing or claim that the original videos of the drug transactions were not accurately depicted in the versions introduced at trial. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER SIX:
In his sixth assignment of error, the defendant contends that the trial court erred in failing to order a sanity commission hearing. In his brief to this court, he sets forth that although a sanity commission was appointed, defense counsel never asked for a hearing. He further complains that the public defender failed to follow through on an examination of the defendant by a qualified psychiatrist as ordered by the trial court. He contends that neither of the people who actually examined him was a qualified psychiatrist.
La.Code Crim. P. art. 644(A) (prior to its amendment by 1997 La. Acts No. 1222, § 1) provided, in pertinent part:
Within seven days after a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall consist of at least two and not more than three physicians who are licensed to practice medicine in Louisiana, who have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment, and who are qualified by training or experience in forensic evaluations. No more than one member of the sanity commission shall be the coroner or any of his deputies. The court may appoint, in lieu of one physician, a clinical psychologist who is licensed to practice psychology in Louisiana, who has been engaged in the practice of clinical or counseling psychology for not less than three consecutive years immediately preceding the appointment, and who is qualified by training or experience in forensic evaluations.
The selection of physicians to serve on a sanity commission rests within the sound discretion of the trial judge. State v. Vince, 305 So.2d 916, 919 (La.1974). There is no requirement in La.Code Crim. P. art. 644 that the doctors appointed to a sanity commission be psychiatrists. State v. Stuart, 344 So.2d 1006, 1008 (La.1977). In State v. Crochet, 354 So.2d 1288, 1292 (La.1977), the Louisiana Supreme Court stated that while there is no requirement that the doctors appointed to a sanity commission be psychiatrists, the refusal to appoint an available psychiatrist to a sanity commission could constitute an abuse of discretion. However, in the absence of a showing that such a specialist was available for appointment, there is no error.
According to the minutes of the instant case, on October 17, 1995, defense counsel[4] made a motion for a sanity hearing. The court granted the motion and appointed a sanity commission to consist of Doctors Freeman and Dawson, and ordered that they *72 report back to the court as to the mental condition of the defendant two weeks prior to the sanity hearing, which he set for January 5, 1996. The court then continued all matters pertaining to the defendant pending the outcome of the sanity hearing. On March 18, 1996, defense counsel filed a written motion for an appointment of a sanity commission. Judge Claiborne then issued an order again appointing Drs. James Freeman and Peter Dawson to examine the defendant. Judge Claiborne also appointed Dr. Frank Silva to examine the defendant.
Subsequently, on May 7, 1996, a hearing was held and the court ordered that Dr. Silva be deleted from the list of appointed doctors. The matter was then submitted on reports from the two remaining doctors. Whereupon, the court found that the defendant understood the proceedings against him and that he was able to assist his counsel in his defense. Included in the record were reports from Dr. Freeman and Dr. Dawson wherein they concluded that the defendant was sane, knew right from wrong, and was able to assist in his defense.
Although the defendant claims that Dr. Silva, a qualified psychiatrist, did not examine him, the law does not require that the defendant be examined by a psychiatrist. The court did appoint Dr. Silva to examine the defendant, but for some reason which is not clear from the record, Dr. Silva did not examine him. However, the defendant was examined by two qualified medical doctors, one of whom was the Coroner for Iberville Parish. Although the defendant complains that defense counsel did not follow through as to this sanity hearing, the court did hold a sanity hearing and determined from the doctor's reports that the defendant was not insane and was able to assist in his defense. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER SEVEN:
In his seventh assignment of error, the defendant contends that his total sentence of seventy-five years was excessive. In his brief to this court, the defendant argues that the court illegally sentenced him to thirty years at hard labor for his conviction of attempted distribution of cocaine (count 2).
He further argues that his sentences were excessive for sales of twenty dollar rocks of crack cocaine and that two of the convictions arose from the same transaction. He also contends that the trial court failed to give any reasons for the defendant's sentences and that he was being punished for going to trial after being offered a plea bargain of fifteen years.
The defendant was sentenced on April 14, 1997. According to the record, the defendant failed to file or make a motion for reconsideration of sentence; however, at the conclusion of the sentencing hearing the defendant stated, "That's an excessive sentence, huh, Your Honor?" Therefore, assuming that the defendant's objection was sufficient to meet the requirements for an oral motion to reconsider sentence, we will review the sentences for the bare claim of excessiveness. See La.Code Crim. P. art. 881.1; see also State v. Mims, 619 So.2d 1059, 1059-60 (La.1993).
At the time the crimes were committed, the penalty for a defendant convicted of distribution of cocaine was a term of imprisonment at hard labor for not less than five years nor more than thirty years and in addition a fine of not more than fifty thousand dollars. See La. R.S. 40:967(B)(1)(prior to its amendment by 1997 La. Acts No. 1284, § 1). The penalty for a conviction of attempted distribution of cocaine was imprisonment for not more than fifteen years at hard labor and a fine of not more than twenty-five thousand dollars. See La. R.S. 14:27(D)(3) and 40:967(B)(1). Thus, the defendant's sentences of thirty years for each conviction of distribution of cocaine and fifteen years for his conviction of attempted distribution of cocaine were within the statutory requirements.
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction *73 of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within the statutory limits. State v. Lobato, 603 So.2d 739, 751 (La.1992).
La.Code Crim. P. art. 894.1 sets forth items which should be considered by the trial court before imposing sentence. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. Code Crim. P. art. 894.1(C). The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). Maximum sentences are reserved for cases involving the most serious offenses and the worst offenders. State v. Easley, 432 So.2d 910, 914 (La.App. 1st Cir.1983).
During the sentencing hearing, the court stated that according to the presentence investigation report, the defendant had twenty-six prior arrests with five misdemeanor convictions, four of which were crimes of violence such as assault and battery. The court further noted that the defendant had two previous felony convictions, one for possession of marijuana with the intent to distribute and another for distribution of cocaine. The court stated that for the defendant's first felony conviction he was placed on probation which was revoked. The defendant's parole based on his second felony conviction was also revoked. The court stated that it was under the opinion that the defendant was not amenable to rehabilitation as the defendant's five misdemeanor charges were committed during the time between his conviction for his second felony and his arrest for the instant offenses. The court noted that the defendant was blaming society for his criminal activities and the police for his selling drugs to the police. The court indicated that prison was necessary to keep the defendant from selling drugs.
After reviewing the record and considering the facts of the instant case, we are unable to say that the trial court abused its discretion in sentencing the defendant to the maximum sentences as the defendant was one of the worst offenders and these crimes were among the most serious offenses. Additionally, although the defendant claims that his sentences should have been imposed concurrently, La.Code Crim. P. art. 883 provides, in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
The imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct. State v. Buie, 477 So.2d 157, 166 (La.App. 1st Cir.1985). However, even if the convictions arise out of a single course of conduct, consecutive sentences are not necessarily excessive. Other factors must be taken into consideration in making this determination. State v. Ferguson, 540 So.2d 1116, 1123 (La.App. 1st Cir.1989). For instance, consecutive sentences are justified when the offender poses an unusual risk to the safety of the public due to his past conduct or repeated criminality. State v. Freeman, 577 So.2d 216, 219 (La.App. 1st Cir.), writ denied, 580 So.2d 668 (La.1991); State v. Grimes, 527 So.2d 1079, 1082 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
In our view, the trial court was justified in imposing consecutive sentences in this case. The three offenses were three separate occurrences that occurred on two different dates. Additionally, according to the trial court, the defendant had a lengthy criminal record and was considered a third felony offender. The trial court considered the defendant to be a threat to society as the court did not think that he would stop selling drugs unless he was jailed. The trial court's reasons for sentencing justified the imposition of consecutive sentences in this case.
Finally, we note that the defendant contends that the court illegally sentenced him *74 to thirty years at hard labor for his conviction of attempted distribution of cocaine. The defendant points out that count two was his convictions of attempted distribution and the minutes of the sentencing hearing state:
Whereupon, the court sentenced defendant without any recommendations of the State on COUNT 1 DISTRIBUTION OF COCAINE TO THIRTY YEARS (30 YEARS) HARD LABOR; COUNT 2, DISTRIBUTION OF COCAINE TO THIRTY YEARS (30 YEARS) HARD LABOR; AND ATTEMPTED DISTRIBUTION OF COCAINE TO FIFTEEN YEARS (15 YEARS) HARD LABOR, said sentence to run consecutive to any other sentence defendant may presently be serving.
At the sentencing hearing the court stated:
The sentence of the Court on one of the counts of distribution of cocaine, 30 years at hard labor. On the second distribution of cocaine, 30 years at hard labor. On the count of attempted distribution of cocaine, 15 years at hard labor.
While the minutes do state that for count two the defendant was given a thirty year sentence, the minutes also clearly state that the sentence was for distribution of cocaine. Nonetheless, the transcript of the sentencing hearing clearly states that the defendant was sentenced to fifteen years at hard labor for his conviction of attempted distribution of cocaine. If there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983). Considering the above, we find this assignment of error to be without merit.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The minutes reflect that this hearing occurred in 1997. This obviously was a typographical error as during that hearing, the trial initially was set for later in 1995.
[2] According to motions filed prior to trial, the defendant also had representation by additional attorneys from IDB.
[3] Iberville Parish Sheriff's Officer Gerald Jenkins was the case agent for the third charge against the defendant. Prior to Noel's testimony, Jenkins testified and identified the envelope in which he had placed the evidence.
[4] This incident occurred prior to the defendant being allowed to represent himself.