815 So.2d 378 (2002)
STATE of Louisiana
v.
Bobby R. WILLIAMS.
No. 2001 KA 1398.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
Rehearing Denied May 9, 2002.
*379 Doug Moreau, R. Christopher Nevils, Office of District Attorney, Baton Rouge, for State of Louisiana.
Frederick Kroenke, Louisiana Appellate Project, Baton Rouge, for Defendant-Appellant Bobby R. Williams.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
PARRO, J.
The defendant, Bobby R. Williams, was charged by bill of information with two counts of armed robbery with the use of a firearm, in violation of LSA-R.S. 14:64 and LSA-R.S. 14:64.3, and one count of aggravated battery, in violation of LSA-R.S. 14:34. He pled not guilty and, after a trial by jury, was found guilty as charged. For count one, armed robbery, he was sentenced to 25 years of imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence. In connection with count one, for the use of a *380 firearm, he was sentenced to an additional five years of imprisonment, without the benefit of parole, probation, or suspension of sentence, to be served consecutively to the 25 year sentence. For count two, aggravated battery, he was sentenced to 10 years of imprisonment at hard labor, with the sentence to run concurrently with the sentences for count one. For count three, armed robbery, he was sentenced to 25 years of imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. In connection with count three, for the use of a firearm, he was sentenced to an additional five years of imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence, to be served consecutively to the 25 year sentence. The sentences for count three are to be served concurrently with the sentences for counts one and two.
The defendant now appeals, urging as a single assignment of error that the trial court erred in not admonishing the jury as to the unduly suggestive identification procedure utilized in connection with the testimony of one of the victims of armed robbery.

FACTS
At approximately 5:10 p.m. on October 25, 1999, the manager of a Burger King restaurant located on Jefferson Highway at its intersection with Lobdell Avenue in Baton Rouge was working in the office with an assistant manager, when the defendant and another man entered. The defendant was wearing a bandana on his head, a hooded sweatshirt, and sunglasses, and he was holding a pistol. He demanded that the manager hand over the money, which the manager had been preparing for a bank deposit. While the manager was attempting to comply with the defendant's demands, the defendant struck him with his pistol, knocking him to the ground. The manager gave the defendant the bank deposit, and the assistant manager gave him the contents of the cash drawers. The defendant took approximately $2,700 total.
An employee of the restaurant, Stacey James, had been working at the drive-through window of the restaurant when she observed a man jump over the counter, pistol in hand, and demand to see the manager. He grabbed James, put the gun to her side, and knocked her down while trying to get to the manager. James saw a second robber, who was shorter and thinner than the first, enter the restaurant, carrying a pistol. At the trial, James identified the defendant as the one who jumped over the counter, demanding to see the manager.
After the robbery, the manager identified the defendant in a photographic lineup, as the robber who hit him with a pistol. He again identified the defendant at the trial. He explained that he had no problem identifying the defendant, because his face was sufficiently exposed, despite the sunglasses and head coverings.
Another employee of the restaurant, Chalete Vaughn, identified the defendant in a photographic lineup, and again at trial, as one of the two men she saw running out of the Burger King, just as she arrived in the parking lot.
The owner of a nearby restaurant observed the two men running from the Burger King and was able to provide the police with a description of their vehicle and the license plate number. A detective of the Baton Rouge City Police, who was in the area, observed a car that met the description of the vehicle in the robbery broadcast. As the detective chased the car, the defendant pointed his pistol at the detective, who later identified the defendant after his arrest and again at trial. *381 The chase ended when the robbers abandoned the vehicle and fled on foot. The owner of this vehicle told police that she had loaned her vehicle to the defendant that day, and the defendant's fingerprints were lifted from the passenger-side roof support of the vehicle.

IN-COURT IDENTIFICATION TESTIMONY
In his sole assignment of error, the defendant contends that the trial court erred in not admonishing the jury to disregard the identification testimony of Stacey James. James was never asked to identify her assailant prior to trial as the other witnesses had done, identifying him for the first time at trial. The defendant asserts that the identification by James, one year after the crimes occurred, when he had been wearing sunglasses, a bandana, and hood, was unreliable and for no other purpose than to unduly influence the jury. He further complains that the identification procedure at trial was unduly suggestive, as the witness knew that she had come to trial to identify the man who had been previously identified by her manager. The defendant asserts that the witness knew that the defendant was the only black man at the defense counsel's table.
Since James made no identification of the defendant prior to trial, there was no motion to suppress her identification in this case. After James identified the defendant at trial, counsel for the defendant moved for a mistrial based upon his assertion that the identification procedure was unduly suggestive. The trial court then allowed the defense counsel to fully cross-examine the witness. Afterward, the trial court allowed the defense counsel to question the witness during a recess, away from the jury, in order to determine whether the identification was unreliable. The trial court determined that, considering the totality of the circumstances, the identification procedure was not unduly suggestive, and denied the motion for mistrial. Counsel for the defendant then moved that the court admonish the jury to disregard James' identification of the defendant, which motion was denied by the trial court.
A pretrial identification is not a prerequisite to an in-court identification. State v. Long, 408 So.2d 1221, 1225 (La. 1982). An accused has no constitutional or statutory right to a pretrial or in-court lineup. State v. Buie, 477 So.2d 157, 162 (La.App. 1st Cir.1985). The Louisiana Supreme Court, in finding that an in-court identification of a defendant, similar to the one in this case, was not unduly suggestive, stated that the mere fact that the defendant was obviously seated at the defendant's table at trial, conspicuously displayed in the accusatorial spotlight, at the time the witness identified him as the perpetrator of a crime, does not suggest to the witness that the defendant committed the crime, only that he is charged with its commission. State v. Johnson, 343 So.2d 155, 160 (La.1977). The decision by a trial court as to whether to allow an in-court lineup as a protective measure is entrusted to the trial court's discretion. See State v. Johnson, 343 So.2d at 161. The trial court, likewise, has broad discretion to decide whether to order protective measures other than a pretrial lineup, such as by seating the defendant elsewhere than in the normal place of an accused in the courtroom. See State v. Johnson, 343 So.2d at 161. Ample opportunity to cross-examine the witness concerning the identification is sufficient to remedy any suggestion inherent in the in-court identification procedure. See State v. Buie, 477 So.2d at 162.
In the instant matter, counsel for the defendant was given the opportunity to fully cross-examine James regarding her *382 observation and memory of the defendant. She testified that despite the hood, bandana, and sunglasses, she could see enough of the defendant to recognize him, just as the other witnesses were able to recognize him in the photographic lineup. She further testified that the defendant came very close to her and pointed a gun at her side. She stated, "That's one thing you cannot forget."
Additionally, the trial court provided detailed jury instructions that further cured any possible prejudice resulting from the identification. The trial court charged the jury as follows:
In appraising the identification testimony of a witness, you should consider whether the witness has the capacity and an adequate opportunity to observe the offender. Whether the witness had an adequate opportunity to observe the offender at the time of the offense may be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had occasion to see or know the person in the past.
You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.
Finally, you must consider the credibility of the identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he has the capacity and opportunity to make a reliable observation on the matter covered in his testimony.
We find that the trial court did not abuse its discretion in allowing the in-court identification of the defendant by James. Any suggestiveness inherent in the procedure was sufficiently remedied by the extensive cross-examination of the witness and by the instructions given to the jury. It was for the jury to decide the weight to be given to this witness's testimony.
Accordingly, this assignment of error is without merit.

PATENT ERROR
This court routinely reviews the record for errors patent whether or not a defendant makes such a request. Under Louisiana Code of Criminal Procedure article 920(2), our patent error review is limited to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible patent errors. However, we note a patent error in sentencing. Louisiana Revised Statute 14:64.3 provides as follows:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Section shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
The minutes and the criminal commitment in the record state that the sentences under this statute for counts one and three were to be served at hard labor. The transcript of the sentencing proceeding reflects that the trial judge imposed the sentence under LSA-R.S. 14:64.3 for count one without imposing imprisonment at hard labor, but under count three, he imposed the sentence of imprisonment to be served at hard labor.
Louisiana Revised Statute 14:64.3 does not provide for the imprisonment to *383 be served at hard labor. The statute's failure to provide for hard labor may be the result of a legislative oversight. Nevertheless, it is a well-established tenet of statutory construction that criminal statutes are subject to strict construction. Any ambiguity in the substantive provisions of a criminal statute is resolved in favor of the accused and against the state. State v. Carr, 99-2209 (La.5/26/00), 761 So.2d 1271, 1274; State v. Williams, 00-1725 (La.11/29/01), 800 So.2d 790, 800. Accordingly, imprisonment at hard labor cannot be imposed under this statute.
This situation is analogous to LSA-C.Cr.P. art. 884 and the jurisprudence thereunder. Article 884 provides in pertinent part that if a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant "shall be imprisoned for a specified period not to exceed one year...". This court has held that this article authorizes only "imprisonment" and not imprisonment at hard labor. State v. Banks, 97-2257 (La.App. 1st Cir.9/25/98), 721 So.2d 24, 27, writ denied, 98-3210 (La.4/23/99), 742 So.2d 877. See also State v. Washington, 27,464 (La.App. 2nd Cir.11/8/95), 662 So.2d 873, 876, writ denied, 96-0462 (La.5/3/96), 672 So.2d 696, and State v. Richardson, 545 So.2d 714, 716 (La.App. 2nd Cir.1989) (per curiam).
In this matter, since LSA-R.S. 14:64.3 does not provide for imprisonment at hard labor, the trial court was correct in omitting the provision of hard labor from its sentence of an additional five years of imprisonment for count one. The trial court erred in imposing hard labor under LSA-R.S. 14:64.3 for count three. Additionally, the minutes and the criminal commitment are in error in stating that the sentences under LSA-R.S. 14:64.3 for counts one and three are to be served at hard labor.
Accordingly, we amend the sentence by deleting that provision of the sentence for count three which requires the additional penalty of imprisonment for five years, under LSA-R.S. 14:64.3, to be served at hard labor. We remand this case to the trial court for correction of the minutes and the commitment order regarding counts one and three.
CONVICTIONS ON COUNTS ONE, TWO, AND THREE AFFIRMED; SENTENCES FOR COUNTS ONE AND TWO AFFIRMED. SENTENCE FOR COUNT THREE AMENDED, AND AS AMENDED, AFFIRMED. REMANDED WITH INSTRUCTIONS.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.