359 So.2d 87 (1978)
STATE of Louisiana
v.
Leroy GIPSON, Jr.
No. 61018.
Supreme Court of Louisiana.
May 22, 1978.
Rehearing Denied June 15, 1978.
*88 Jack & Jack, Wellborn Jack, Jr., Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Stephen A. Glassell, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
By a bill of information filed on March 10, 1977 Leroy Gipson, Jr., was charged in three counts with armed robbery alleged to have been committed on October 1, 1976.
*89 Count one charged the robbery of Steve Ely; count two, Charles Ely; and count three, Judy and Maggie Ely. After trial by jury Gipson was found guilty on all three counts and sentenced to thirty-three years imprisonment at hard labor without benefit of parole, probation or suspension of sentence on each count, the sentences to run concurrently. Seven assignments of error are urged on this appeal.
Assignment 1: In this assignment the defense complains of the denial of motions for new trial and in arrest of judgment. The motions are based upon the issues raised in the following assignments of error.
Assignment 2: On the day the case was set for trial the judge read the qualifications for service as a petit juror and called the roll of the petit jury venire. Of the 100 persons on the venire 28 reported present, 23 who were not present had been excused by the trial judge, 48 were reported "unable to serve" by the sheriff, and one failed to appear. Of those present five more were excused by the trial judge. The defense then filed a motion to quash the petit jury venire because the names of 23 out of 52 petit jurors had been removed from the venire before the case was called for trial. Excusing these veniremen is alleged to have occurred out of the presence of defense counsel and without making a record of the facts and reasons for excusing them. For this reason defendant asserts he had no opportunity to object, and the appellate court cannot review the action of the trial judge.
At a hearing held prior to trial, at the request of defense counsel, the trial judge referred by name to each of the 23 prospective jurors excused for what he considered good and sufficient reasons. In each instance he stated why he excused the petit jury veniremen, citing such matters as hardship, age, illness, absence, etc. When the recitation was complete, the trial judge noted defense counsel's general objection to the reasons for excusing the veniremen and overruled the objections.
In brief before this Court the defense does not question the authority of the trial judge to excuse a member of the petit jury venire, contending only that the absence of a record of the facts and reasons for excusing them makes it impossible for the defendant or a reviewing court to question the trial judge's discretion. Nor does the defendant set forth any specific objection questioning the validity of the reasons assigned by the trial judge for excusing the 23 jurors in question. Apparently, judging from the detailed reasons assigned by the trial judge, he did keep a record of the persons excused and the reasons for excusing them. A review of those reasons discloses no abuse of discretion and none has been pointed out.
To support its position that a record should be made of the facts and reasons for excusing members of the petit jury venire from jury service in this case, the defense points to Article 843 of the Code of Criminal Procedure, pertinently providing that:
"In felony cases . . . the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel."
Excusing veniremen for cause by the trial judge is specifically authorized by Article 783 of the Code of Criminal Procedure. The article permits this action either on the initiative of the trial judge or on recommendation of an official or employee designated by the court. This action is not the type "proceeding" contemplated by Article 843. That article more properly contemplates a "proceeding" such as a formal hearing or trial, not an ex parte ministerial function which by its very nature occurs informally at times and places which do not lend themselves to the delays and formalities attending recordation of facts and reasons.
Moreover, the transcript convinces this Court that the trial judge must have made some record of the reasons for excusing *90 members of the venire. No effort has been made to point out wherein those reasons exceeded the discretion reposed in the trial judge. This assignment is therefore without merit. See State v. Cass, 356 So.2d 936 (La.1977).
While defendant's brief makes a similar contention with regard to the use of another petit jury venire from another section of the same court, the record contains no motion to quash that venire, and no reference to the pages of the record is furnished by the defense upon which this alleged error is based. Therefore, this contention cannot be considered. La.Code Grim.Pro. arts. 841, 845; La.Sup.Ct.Rules I, § 6(d) and VII, § 6.
Assignment 3: Prior to trial the defense filed a motion to suppress evidence of identification unnecessarily obtained by impermissibly suggestive means. The motion alleged that defendant was a black male. While in custody following his arrest in this case he was exhibited in line-ups where he was the only bearded person. Because of this his identification at the line-up and subsequent in-court identification by the victims of the robbery is claimed to have been tainted by a line-up conducted by means and under circumstances conducive to irreparably suggestive identification. Testimony concerning identification in court was therefore inadmissible.
During the noon hour on October 1, 1976 two armed black men entered the Ely family grocery store and market in Shreveport. At gun point they forced the store owner Steven Ely, his wife Judy, his father Charles, his mother Maggie and the grocery boy Charles Middlebrooks to lie on the floor behind the counters. The robbers rifled the cash register, demanded money from the victims and departed. The police were summoned and obtained descriptions of the robbers from the victims.
An observer from across the street described the get-away automobile and gave the police its license number. With this information they learned from the car owner, that evening, that she had loaned the vehicle to the defendant. He was arrested that night and four days later was identified by the victims in the line-up.
Photographs of the line-up are in the record. All participants were black males, and only defendant had noticeable facial hair  a sparse mustache and goatee. The growth was not so abundant that it affected his facial conformation or features. No other distinguishing characteristics, save ordinary variations in size, are noticeable. All participants were similarly dressed. The victims who positively identified the defendant at the pretrial line-up also identified him at the trial. While the robbery was in progress they had ample opportunity to see him face to face at close range in a well-lighted grocery store at midday.
In addition to the fact that the line-up was not so suggestive that it led to mistaken identification, the in-court identification by the victims under the totality of the circumstances was well supported by independent sources. There was no denial of due process here. State v. Guillot, 353 So.2d 1005 (La.1977).
Assignment 4: A motion to quash the bill of information was filed by the defense on the ground that the arrest of defendant was without probable cause. As a result, it is contended, evidence of identification which followed was tainted by the illegality and should also be suppressed. In a pretrial hearing both motions were denied, and these rulings are assigned as error.
Defendant's arrest came about as a result of a call received by the police reporting the grocery store robbery. The police were at the scene shortly thereafter, conducted a preliminary investigation and returned to the police station. Upon arrival there a man approached Officer Kinchen and reported that following the robbery he saw two men hurriedly drive off in a "deuce and a quarter" (Buick Electra 225) automobile parked in an alley across the street from the grocery. His description of the culprits matched that given by the victims. The informer also gave the car's license number. Kinchen did not know the man and failed to ascertain his name. With the information *91 then available, the police checked the registration of the Electra 225 and learned that it belonged to Dorothy Relliford. In conversations with Relliford that night they learned that she had loaned the car to defendant for the day. On the basis of this information defendant was arrested that night. Three days later he was placed in the line-up.
According to the defense, the information received by Officer Kinchen from the unidentified informant is not reasonably trustworthy information, and, therefore, the officers did not have reasonable cause to make the arrest.
Although in some instances an unidentified informant's statements may not serve to establish reasonable cause to make an arrest, this is not such a case. In addition to seeing defendant and his confederate fleeing the site of the robbery, the informant was able to furnish descriptions of the two which matched descriptions furnished by the victims. A detailed description of the escape car, including its license number, was also reported. This salient information was conveyed to the police shortly after they returned from the scene of the robbery where the fact of armed robberies was established to their satisfaction by four witnesses, all victims. Within a few hours thereafter the police verified the ownership of the escape vehicle, and learned from the owner that the car had been loaned to the defendant during the time the robbery occurred. These facts and circumstances should be considered in connection with the fact that this informant was not a confidential informant hired by the police, nor a professional tipster, but a concerned citizen. His report does not stand alone to establish probable cause.
Bolstered by these supporting facts and circumstances, the unidentified informant's story became reliable and reasonably trustworthy, furnishing adequate grounds for the arrest and identification which followed. La.Code Crim.Pro. art. 213(3); State v. Linkletter, 345 So.2d 452 (La.1977).
Assignment 5: Defense counsel argues that the trial judge erred by instructing the jury, over defense objection, that it could return a verdict of guilty as to all three counts of the information. This objection is based upon the contention that to instruct the jury that a verdict of guilty could be returned on each count was to expose defendant to double jeopardy. It is argued that the evidence indicated that only one armed robbery with three victims resulted from the transaction at the grocery store, not three armed robberies.
Joinder of offenses is permitted by Article 493 of the Code of Criminal Procedure under these terms and conditions:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
The counts of the indictment satisfy the criteria set forth in the article in that the charges are of the "same or similar character", are also "based on the same act or transaction", and are "triable by the same mode of trial." Now it must be decided whether multiple victims involved in the same transaction render this joinder of offenses prejudicial, subjecting defendant to double jeopardy?
Armed robbery is a theft of anything of value "from the person of another or which is in the immediate control of another" by use of force or intimidation, while armed with a dangerous weapon. La.Rev.Stat. 14:64. An essential element of the offense is theft from the person of another by force or intimidation. The law intends therefore to protect each person offended in that fashion, and each person offended in such a fashion is the victim of a separate crime. It is not double jeopardy therefore to charge or punish the robber for each person he subjects to this offensive conduct.
*92 State v. McCarroll, 337 So.2d 475 (La. 1976), involved a situation where the defendant entered a restaurant, brandished a weapon and warned that anyone who moved would be killed. As a consequence defendant was charged with nine counts of aggravated assault  one count for each victim present in the restaurant during the incident. He argued, as defendant does here, that only one assault with multiple victims was involved. We held there that the aggravated assault statutes were designed "to protect each citizen from the defined criminal conduct." It is our view that the legislative intent was to afford the same protection to each person robbed from the criminal conduct set forth in the armed robbery statute. Joinder did not therefore result in double jeopardy, defendant's contention is met and this assignment is without merit.
It is apt to observe here that the issue is more properly presented by the motion for severance authorized by Article 495.1 of the Code of Criminal Procedure. That article contemplates that such a motion should be filed before trial or during trial. It is contrary to that authority to delay a request for severance until all evidence has been presented and the charge to the jury has been prepared on that basis. At that stage of the trial any prejudice which may have resulted from the joinder is a matter accomplished, and severance could not cure the ill.
Assignment 6: Prior to the charge to the jury, defense counsel requested that the trial judge instruct the jury as follows:
"If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no such conclusion should be drawn by you with regard to a witness who is equally available to both parties, or where the witness's testimony would be merely cumulative.
"The jury will always bear in mind that law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."
To support the request for this special charge the defense argues that Officer Kinchen withheld the name and identity of the witness who observed defendant and his confederate fleeing the scene of the robbery. Failure of that witness to testify is said to have created a legal presumption that evidence under the control of the party and not produced by him was not produced because it would not have aided him.
Failure of the trial judge to give this special charge is claimed as error.
Both the State and the defendant have the right before argument to submit to the court special written charges for the jury. A requested special charge shall be given by the court only if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge. La.Code Crim.Pro. art. 807.
The special charge requested by defendant is substantially contained within this portion of the charge the trial judge did give:
"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption that evidence under the control of a party and not produced by him was not produced because it would not have aided him."
As expressed by the trial judge, the charge he gave is an exact quotation from Section 432 of Title 15 of the Revised Statutes. It is a correct expression of the law on the subject. No error was committed by the failure of the trial judge to charge as requested by defendant.
Assignment 7: Defense counsel requested a special charge dealing with identification testimony, contending that it was approved by our decision in State v. Edgecombe, *93 275 So.2d 740 (La.1973), cert, denied, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973). The correctness of the charge was not at issue in that case; the charge was quoted in a footnote to illustrate the fact that no prejudice resulted to defendant despite the fact that his pretrial identification was without the benefit of counsel.
A review of the general charge pertaining to credibility of witnesses, presumption of innocence and reasonable doubt establishes that the court sufficiently instructed the jury on the proper weight to be attached to the evidence and the standard of proof needed for a conviction.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
DENNIS, J., concurs and points out that something of value was taken from each victim; thus a separate armed robbery was perpetrated upon each victim.
TATE, J., assigns additional concurring reasons.
TATE, Justice (concurring).
With regard to Assignment 3 (the motion to suppress the identification), the totality of circumstances indicate that the victims identified the defendant independently of the lineup.
Normally, the inclusion of one bearded man alone (the defendant) in the lineup might be suggestive. Here, however, the initial post-crime description of the robber by the victims had included no reference to his sparse mustache and goatee.
Two of the other participants wore thin mustaches like the defendant's. The defendant also argues that the star-shaped tatoo on his cheek impermissibly distinguished him from the other members of the lineup. But examination of the lineup photographs discloses that defendant's tatoo was not visible to the witnesses.
Verbal description of the allegedly distinguishing characteristics presents an arguable case for treating this lineup as impermissibly suggestive, but visual examination of the photographic record reveals that there were no noticeable distinguishing characteristics such as would render the lineup unfair.