849 So.2d 657 (2003)
STATE of Louisiana
v.
Kenneth DILOSA.
No. 2001 KA 0024.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*662 Walter P. Reed, District Attorney, Covington, Dorothy A. Pendergast, Metairie, Counsel for Appellee State of Louisiana.
Carol A. Kolinchak, New Orleans, Counsel for Defendant/Appellant Kenneth Dilosa.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
Defendant, Kenneth Dilosa, and his codefendant, Johnny Lee White, Jr., were indicted by a grand jury with one count of distribution of heroin each, a violation of La. R.S. 40:966 A(1). Defendant pled not guilty. Following a jury trial, defendant and White were found guilty as charged. Defendant was sentenced to life imprisonment without benefit of probation or suspension of sentence. For the following reasons, defendant's conviction and sentence are affirmed.

FACTS
Trooper Richard L. Horton, a narcotics investigator for the Louisiana State Police, was a case agent for an investigation of narcotics distribution in the Slidell area. On September 11, 1997, Trooper Horton met with Jesse Simon of the Slidell Police Department. Simon introduced Trooper *663 Horton to a confidential informant (CI), who had contacts with people who sold narcotics. Trooper Murphy Paul, an undercover agent, also was involved with the contact with the CI.
As a result of information provided by the CI, Trooper Paul was able to make a telephone contact with Johnny White on September 11, 1997, and White agreed to meet with Trooper Paul at a Texaco station located on Old Spanish Trail in Slidell. At the meeting, Trooper Paul told White he wanted to purchase a bundle of heroin.[1] White indicated the bundle would cost about $250-$300. After Trooper Paul agreed he would pay $250 for the bundle, White called defendant, identified only as "Jack" at this point in time, on his cell phone and defendant agreed to meet White and Trooper Paul at the Lake Forest Plaza Mall in New Orleans. Defendant's identity was discovered when the surveillance team monitoring Trooper Paul tracked the license plate number from the vehicle defendant used in the first transaction.
Trooper Paul and White then drove to the mall and met defendant, where they completed a transaction for one bundle of heroin. The transaction was captured on video surveillance equipment. Following the transaction, Trooper Paul asked defendant about future transactions. The defendant stated that he should be getting some white heroin, as opposed to the brown heroin involved in the present transaction. Trooper Paul and White then drove back to the Texaco station where he let White return to his vehicle. Trooper Paul then proceeded to a prearranged location where he turned over the drugs to Trooper Horton. Trooper Horton conducted a field presumptive test, which tested positive for heroin. According to Trooper Horton, 2.05 grams of heroin were sold during this transaction.
On September 23, 1997, Trooper Paul again contacted White and told him he wanted to buy two bundles of heroin (approximately 4 grams). Trooper Paul was told that the price of heroin had gone up to $300 a bundle because it was a more potent grade. Trooper Paul agreed to pay $600, and White contacted defendant. Another meeting was scheduled at the same mall where the first transaction took place. Once again White accompanied Trooper Paul from Slidell to the Lake Forest Plaza Mall. While White and Trooper Paul were waiting in the parking lot, the mall security seemed to take note of them. When defendant arrived, he asked if they could relocate to the Popeye's restaurant across the street. Trooper Paul agreed, but took his time in getting there so the surveillance officers could have time to get into a different position.
Trooper Paul and White met defendant in the parking lot behind the Popeye's. White went to defendant's vehicle, got a small plastic bag containing a brown powdery substance and turned over the bag to Trooper Paul. Trooper Paul examined the bag and gave $600 to the defendant. Trooper Paul and defendant again discussed the possibility of future transactions, with Trooper Paul inquiring whether defendant could obtain an ounce of heroin. The defendant indicated he could get an ounce.
Trooper Paul and White returned to Slidell, with White being dropped off at his vehicle. Trooper Paul then met with Trooper Horton and turned over the bag containing the brown powdery substance. *664 Trooper Horton testified that his field presumptive test determined this substance was 4.05 grams of heroin.
On November 6, 1997, Trooper Paul paged White. When White returned his call, Trooper Paul explained that he wanted to purchase a half-ounce of heroin. White said that amount of heroin would cost $3,200. The two men again met at the Texaco station in Slidell. This time, defendant was meeting them at the Texaco station in Slidell to complete the transaction. The defendant arrived in a red Jeep Wrangler. When he arrived, White got out of Trooper Paul's vehicle and went over to defendant's Jeep. White got in the Jeep while Trooper Paul leaned in through the doorway. Defendant gave Trooper Paul a plastic container with a brown powdery substance. Trooper Paul gave defendant $3,200. After the purchase and some brief conversation, defendant left.
Trooper Paul then met Trooper Horton and gave him the plastic container. Trooper Horton conducted a field presumptive test, which resulted in a positive test for heroin. Trooper Horton indicated that he weighed the heroin, which amounted to 13.5 grams.
Members of the surveillance team followed defendant after he left the Texaco station. Trooper Joseph Hasselbeck was contacted and told to stop defendant's vehicle, which he did at approximately Mile Post 253 on Interstate 10 in Orleans Parish. Defendant was arrested at that time on warrants for the two prior drug transactions that occurred in Orleans Parish. Incidental to defendant's arrest, a search of his vehicle and person turned up $3,000 in cash. The cash seized matched the cash Trooper Horton had photocopied and given to Trooper Paul to use in the transaction that occurred earlier that evening.
Trooper Horton took the drugs obtained in the November 6, 1997 transaction, sealed them in an envelope, and placed it in Bin 190 of the State Police Narcotics Office in Metairie. According to Trooper Horton's testimony, he transported this evidence to the State Police Crime Lab in Baton Rouge on November 7, 1997. However, the paperwork accompanying this evidence indicates the evidence actually arrived at the Baton Rouge Crime Lab on November 10, 1997.
Howard Pentes, a forensic scientist with the State Police, as well as the supervisor of the drug section of the state laboratory at the time of trial, testified that the material obtained in the November 6, 1997 transaction tested positive for heroin in the laboratory tests. According to Pentes, when he received the evidence delivered by Trooper Horton, it had not been tampered with. Val Penouilh, the lieutenant in charge of the narcotics at the State Police Crime Lab in Baton Rouge, testified that when he received the package containing the evidence of the November 6, 1997 purchase, it was properly sealed. Lt. Penouilh testified he received the package on November 10, 1997.
Co-defendant Johnny White testified at trial. He stated he was contacted several times by the CI, who wanted to know if he knew a source for heroin. White acknowledged dealing cocaine to the CI, but not heroin. White testified that after the CI made five to six inquiries regarding heroin, he called defendant. According to White, he would find out the price of heroin by calling defendant and then pass along the information to the CI or Trooper Paul, who White only knew by his undercover alias, "Country." Although White acknowledged that he connected a source for heroin with the ultimate purchaser, he denied ever receiving anything from the transactions. White testified he was present at each transaction between Trooper Paul and defendant.
*665 Defendant did not testify at trial. Defendant was tried before a jury along with White as a co-defendant. Following the trial, the jury found defendant guilty as charged on one count of distribution of heroin for the November 6, 1997 transaction. Defendant appeals, urging twelve assignments of error.

SUFFICIENCY OF THE EVIDENCE
In his tenth assignment of error, defendant argues that the evidence was insufficient to support his conviction. In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984). The standard has been codified in La.C.Cr.P. art. 821.
The statute under which defendant was charged, La. R.S. 40:966, reads in part as follows:
A. Manufacture; Distribution. Except as authorized by this Part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I;
Heroin is listed in Schedule I.
Defendant argues that the state failed to prove the substance distributed was heroin because the state failed to document and maintain the chain of custody of the evidence purported to be heroin.
Chain of custody establishes the custody of an object from the time it is seized to the time it is offered into evidence. State v. Spradley, 97-2801, p. 9 (La.App. 1 Cir. 11/6/98), 722 So.2d 63, 69, writ denied, 99-0125 (La.6/25/99), 745 So.2d 625. A sufficient foundation for the introduction of demonstrative evidence is laid if the evidence establishes that it is more probable than not that the object is the one connected to the case. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. A continuous chain of custody need not be established if the evidence as a whole establishes more probably than not that the object introduced is the same as the object originally seized by police officers. Spradley, 97-2801 at p. 10, 722 So.2d at 69.
Trooper Paul testified that during the November 6, 1997 transaction, he received a cellophane bag with a brown powdered substance. Following the transaction, Trooper Paul met with Trooper Horton and turned the bag over to him. Trooper Horton testified that he received a cellophane bag containing a brown powdery substance from Trooper Paul and conducted a presumptive field test, which indicated the substance was heroin. Trooper Horton then sealed the bag containing the substance in an envelope and placed the envelope in Bin 190 at the State Police Narcotics Office in Metairie. Although Trooper Horton admitted there was no paperwork documenting his transfer of the evidence to the State Police Crime Lab in Baton Rouge, he testified that he personally transported the evidence to Baton Rouge. Val Penouilh, a lieutenant in *666 charge of the south district for narcotics, testified he received the properly sealed evidence package at the Baton Rouge Crime Lab. According to Lt. Penouilh, the package had not been opened or tampered with in any way. The evidence was later determined by laboratory analysis to be heroin.
Although the defendant argues that neither Trooper Paul nor Trooper Horton placed any identifying marks on the evidence once it was obtained, and Trooper Horton could not verify when he took the evidence to the State Police Crime Lab in Baton Rouge, the evidence is admissible as long as a connexity by a preponderance of the evidence is established. State v. Sherer, 354 So.2d 1038, 1042 (La.1978). It is not necessary that all possibility of alteration be eliminated for evidence to be admitted. Id. An appellate court does not reweigh credibility of witnesses when reviewing the sufficiency of the evidence. State v. Davis, XXXX-XXXX, p. 3 (La.App. 1 Cir. 6/21/02), 822 So.2d 161, 164. The jury was free to accept or reject the testimony of the State Police Troopers indicating the evidence was sealed, not tampered with, and that all tests, both laboratory and presumptive field tests, revealed it was heroin. The evidence substantiates that it was more probable than not that the evidence obtained in the November 6, 1997 transaction was not tampered with and was, in fact, heroin.
This assignment of error lacks merit.

RIGHT TO COUNSEL
Through his first assignment of error, defendant asserts he was denied his right to retain counsel of his choice, his right to present a defense, and effective assistance of counsel.
Right to Retain Counsel of His Choice and Present a Defense
Louisiana Code of Criminal Procedure Article 515 provides:
Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court. The court may assign other counsel in substitution of counsel previously assigned or specially assigned to assist the defendant at the arraignment.
The right to counsel cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Seiss, 428 So.2d 444, 447 (La.1983). While the right to counsel of choice in a criminal trial is guaranteed by the United States and the Louisiana Constitutions, there is no constitutional right to make a new choice on the date a trial is scheduled to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. State v. Leggett, 363 So.2d 434, 436 (La. 1978). The right to counsel of choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. State v. Lee, 364 So.2d 1024, 1028 (La.1978). Once the day of trial has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial court. The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for a continuance made on the day of trial when the defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel. State v. Leggett, 363 So.2d at 436; State v. Spradley, 97-2801 at p. 5, 722 So.2d at 67.
*667 The defendant was arrested on November 6, 1997, on warrants from Orleans Parish, and he remained in Orleans Parish Prison. On June 18, 1998, a St. Tammany Parish Grand Jury returned a true bill charging him with the present offense. The minutes in this matter indicate that defendant made his first court appearance in this case on July 8, 1998, wherein he was accompanied by counsel, Gerald Leydecker, and entered a plea of not guilty. The matter was assigned for trial on September 21, 1998.
On September 21, 1998, the defendant's counsel, James G. Burke, III, appeared and requested a continuance, which was granted and the trial rescheduled for October 26, 1998. On October 26, 1998, Burke again moved for and was granted a continuance of trial until January 25, 1999. On January 25, 1999, pursuant to a joint motion by the state and defense, another continuance was granted until March 15, 1999. On March 15, 1999, Burke obtained another continuance until May 3, 1999. The defendant had not appeared in court on this matter since July 8, 1998, when he entered his plea. However, the minutes also reflect that the only events that occurred were the numerous continuances of the trial date.
On April 29, 1999, the Chief Public Defender filed a motion to appoint counsel because of a conflict of interest existing in this matter. Specifically, defendant's counsel until that point had been James G. Burke, III, who also represented co-defendant White.
On May 3, 1999, the defendant was present in court without an attorney, and the court ordered the trial continued to June 16, 1999. On May 7, 1999, David Carollo was appointed to represent defendant. On June 16, 1999, the defendant and his counsel, David Carollo, were in court. Pursuant to a defense motion for continuance, the trial was continued until September 20, 1999. On September 20, 1999, the defendant and his attorney were present in court, and the defendant advised the court that he wanted to retain private counsel and sought a continuance. The court denied the defendant's request to continue the trial.
Defendant argues that he was unable to retain counsel of his choice and that the trial court erred in denying his motion for continuance. Defendant asserts that he was not adequately notified of the proceedings against him such that he had the opportunity to obtain private counsel.[2] It is evident that defendant was not brought to court from July 8, 1998 until May 3, 1999. The state offers no explanation for this failure. However, following the appointment of David Carollo as defendant's attorney, he was present in court on June 16, 1999, and the minutes reflect the trial court set the trial date as September 20, 1999. There is no evidence defendant In sought to inform the trial court of his desire to retain private counsel. In the three-month span between June 16 and September 20, 1999, there is no indication defendant sought private counsel. The first indication the trial court had that defendant desired private counsel was the morning of his trial.
Considering the facts as presented by the record, we cannot say the defendant exercised his request to retain counsel in a reasonable time, manner, or stage of the proceedings. Further, the trial court did not err in denying the defendant a continuance of his trial. Nor can we say there *668 was any showing that defendant was denied access to any private counsel, given the complete lack of any indication defendant had retained such counsel. This portion of the assignment of error is without merit.
Ineffective Assistance of Counsel
Following the testimony of co-defendant White, defendant requested his attorney seek a severance, which the trial court denied as untimely. The transcript reflects defendant alleged he told his attorney to seek a severance prior to trial, and defense counsel explained he never considered a motion for severance based upon his defense strategy in this matter. Defendant also alleges defense counsel failed to interview witnesses available to testify on his behalf.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted.[3] Where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Lockhart, 629 So.2d 1195, 1207 (La.App. 1st Cir.1993), writ denied, 94-0050 (La.4/7/94), 635 So.2d 1132.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. First, the defendant must show that counsel's performance is deficient. Second, the defendant must show that this deficient performance prejudiced the defense.
The issues raised by defendant clearly question the trial strategy and preparation put forth by his trial counsel. Such issues can only be resolved on evidentiary findings regarding his trial counsel's investigation, preparation, strategy, and whether counsel's performance was deficient such that it prejudiced defendant. These questions cannot be determined by this appellate review and should be asserted through an application for post-conviction relief. See State v. Eames, 97-0767, p. 8 (La.App. 1 Cir. 5/15/98), 714 So.2d 210, 216, writ denied, 98-1640 (La.11/6/98), 726 So.2d 922. Accordingly, these portions of defendant's assignment of error are not subject to appellate review.
This assignment of error is without merit.

SEVERANCE
In his second assignment of error, the defendant argues that the trial court's failure to grant a severance constitutes reversible error.
On the morning of September 23, 1999, following the testimony of co-defendant White, defendant's counsel addressed the court with the following: "[Defendant] asked me to inform the Court that he'd like to make a motion for a severance in this matter." Defendant was then allowed to address the court as follows:
Prior to coming to trial, when I found out that I was coming to trial I believe that was Sunday night or Monday morning, I advised my attorney that I wanted a severance then. I didn't want to go to trial with my co-defendant. And he never put in my request. That's why I *669 asked for it today and that I also had witnesses prepared to testify that he never interviewed or put on the stand. I'd just like all that on the record.
The trial court ruled that the objection of misjoinder of defendants may only be urged by a motion to quash the indictment, which had to be done before trial. Defendant stated that he asked his attorney to do this before trial to which defense counsel responded, "For the record, Your Honor, I never considered a motion for severance based upon defense strategy in this matter, which was not to the detriment of [defendant]." At that point, defendant addressed the court, "My strategy never was the entrapment. I had."
Defendants who are jointly indicted are to be tried together unless the court finds that justice requires a severance. La.C.Cr.P. art. 704. The courts have permitted a severance to co-defendants whose defenses are antagonistic to each other. Defenses are antagonistic when each defendant intends to exculpate himself by putting the blame for the offense on a co-defendant. However, a mere allegation that the defenses are antagonistic is insufficient because convincing evidence of actual antagonism must be present to justify a severance. An accused is not entitled to a severance as a matter of right; the decision is one resting within the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. Reversal of a conviction for failure to sever will not always be mandated unless prejudice can be shown. State v. Price, 93-0625, 93-0626, pp. 3-4 (La.App. 1 Cir. 3/11/94), 636 So.2d 933, 936-37, writs denied, 94-1566 (La.10/14/94), 643 So.2d 159 and 94-0742 (La.6/17/94), 638 So.2d 1091. A motion to sever may be made during trial at the time the prejudice to the mover becomes manifest. State v. McGraw, 366 So.2d 1278, 1285 (La.1978). Justice does not require a severance where only the extent of participation of each defendant is at issue. State v. Gaskin, 412 So.2d 1007, 1012 (La.1982).
The trial court's reasons for denying the severance were not erroneous under the circumstances presented in the record. Although defendant indicated to the court he had no wish to be tried with his codefendant, the defendant did not actually request a severance until after White had testified.
Defendant argues that the testimony of White was prejudicial in that White portrayed defendant as the "drug dealer," identified defendant as the heroin source, and testified there was no doubt heroin was being sold by defendant because the transaction took place in his presence. White attempted to portray himself as merely the connection who put Trooper Paul in touch with the ultimate distributor of heroin. White also denied receiving any money for his role in the transaction.
After reviewing the record, we do not find White's testimony to be so antagonistic to defendant that it would allow this court to conclude the trial court abused its discretion in failing to grant the severance. Prior to White's testimony, Trooper Paul had already identified defendant as the seller of heroin. Trooper Paul also testified that money was given to defendant in exchange for heroin. Although defendant's trial strategy seemed to center around whether the state could prove the substance exchanged was actually heroin, the testimony of White was not different than the testimony of Trooper Paul regarding whether defendant was the individual involved in the drug transaction. Moreover, White's testimony portraying defendant as the "drug dealer" is more appropriately considered to raise the issue of the extent of participation of each defendant *670 in the transaction. Such an issue is not grounds for granting a severance. Accordingly, this assignment of error is without merit.

PROCEEDINGS OUTSIDE THE PRESENCE OF DEFENDANT
In his third assignment of error, defendant argues it was error for the trial court to conduct certain proceedings outside of the defendant's presence. Specifically, defendant alleges he was not present at the September 1, 1999 hearing on the application for bill of particulars for oyer and motion for pre-trial inspection.
Louisiana Code of Criminal Procedure Article 831 provides that the defendant's presence is required:
(1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced; and
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.
There is no jurisprudence or statute mandating that defendant be present at a discovery motion. Moreover, the minutes reflect that defense counsel informed the court that he was satisfied with the state's response, and the state informed the court that it was satisfied with the defendant's response. Defendant's absence from such proceedings is not reversible error. This assignment of error is without merit.

OTHER CRIMES EVIDENCE
In his fourth assignment of error, defendant argues that the introduction of two prior instances of heroin purchases that took place in Orleans Parish between defendant and Trooper Paul were erroneously admitted.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). However, Article 404 B(1) of the Louisiana Code of Evidence provides the following exceptions to this general rule of inadmissibility:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident,... or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The second sentence of this article refers to other crimes evidence that previously was admissible under former La. R.S. 15:445-446 (Prieur evidence) and former La. R.S. 15:447-448 (res gestae). See La. C.E. art. 404, comments (k) & (m).
Prior to trial, the state provided notice of its intent to introduce other crimes evidence pursuant to La. C.E. art. 404 B. Specifically, the state sought to *671 introduce the heroin purchases of September 11, 1997, and September 23, 1997, that took place at Lake Forest Plaza Mall in Orleans Parish. The state claimed the purpose of introducing these other crimes was to establish a system, plan, scheme, knowledge, motive and intent on the part of defendant. Following a Prieur hearing on the morning of trial, the trial court ruled the evidence was admissible. Because defendant failed to object to this ruling, this issue is not preserved for appeal.
The record indicates that following the trial court's ruling that the two prior transactions were admissible, there was no objection by defense counsel. To preserve the right to appeal the introduction of testimony, the defendant must make a timely objection and state the specific ground of objection. La. C.E. art. 103 A(1); see also La.C.Cr. P. art. 841; State v. Wisinger, 618 So.2d 923, 927 (La.App. 1st Cir.), writ denied, 625 So.2d 1063 (La. 1993).
In any event, admission of the other crimes evidence was not reversible error. The evidence served to establish defendant's identity and to contradict co-defendant White's defense of entrapment by establishing that there was clearly intent on the part of the participants to willingly take part in these transactions. Accordingly, even if such admission of evidence was erroneous, it was harmless error. See State v. Wisinger, 618 So.2d at 927.
This assignment of error is without merit.

JURY INSTRUCTIONS
In his fifth assignment of error, defendant argues the trial court erred in giving improper jury instructions. Specifically, defendant asserts the trial court's instructions regarding intent and acquittal were erroneous.
Erroneous instructions or failure to give jury instructions are not errors patent, and absent an objection during the trial, a defendant may not complain on appeal of an allegedly erroneous jury charge or the failure to give a jury instruction. See La.C.Cr. P. arts. 801 C, 841 and 920(2); State v. Tipton, 95-2483, p. 7 (La. App. 1 Cir. 12/29/97), 705 So.2d 1142, 1147. In the present case, the record does not reflect that defendant made a contemporaneous objection to the jury charges on the basis of the alleged failures now asserted in this assignment of error. Accordingly, the issue raised in this assignment of error is not properly preserved for appellate review.
This assignment of error lacks merit.

ABSENCE OF FULL AND COMPLETE RECORD
In his sixth assignment of error, defendant argues he has been forced to proceed in his appeal with an incomplete record. Defendant identifies five portions of the proceedings against him that are not part of the appellate record. These portions are all pre-trial proceedings with the exception of the proceedings held the morning of trial; discussions regarding counsel retained by the defendant and his availability to try the case; numerous bench conferences; two letters written by co-defendant White to the assistant district attorney; and co-defendant White's statement to authorities on December 17, 1997.
Under the Louisiana Constitution, art. I, § 19, "[n]o person shall be subjected to imprisonment ... without the right to judicial review based upon a complete record of all evidence upon which the judgment is based." This requirement is codified in La. C.Cr.P. art. 843, which mandates a court stenographer record all of the "proceedings, including the examination of prospective *672 jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel."
The type of "proceeding" contemplated by article 843 was addressed by the supreme court in State v. Gipson, 359 So.2d 87 (La.1978). The supreme court explained that a proceeding consisted of a formal hearing or trial. It did not include an ex parte ministerial function that by its very nature occurs informally at times and places that do not lend themselves to delays and formalities attending recordation of facts and reasons. Gipson, 359 So.2d at 89. The plain wording of Article I, § 19 extends defendant's constitutional right to a complete record only as to all evidence upon which the judgment is based.
Accordingly, there has been no showing that any pre-trial proceedings that are not transcribed included rulings on evidence ultimately presented at trial. Regarding defendant's assertion that there were discussions concerning whether he had retained counsel, it has been previously observed that such a matter is more properly addressed through an application for postconviction relief, where an evidentiary hearing can be held to determine if defendant had in fact retained private counsel prior to trial and whether defendant was denied such counsel.[4]
Defendant asserts that numerous bench conferences during trial were not transcribed. The supreme court stated in State v. Deruise, 98-0541, pp. 14-15 (La.4/3/01), 802 So.2d 1224, 1236, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001) that it has never articulated a per se rule either requiring the recording of bench conferences or exempting them from the scope of La.C.Cr.P. art. 843. The Deruise court noted that article 843's requirement that "objections" and "arguments" be recorded normally applied only to objections made in open court and the arguments of counsel in closing, because only these objections and arguments rise to a level of materiality sufficient to invoke Article 843. The court also determined that the mandate of Article I, § 19 that "evidence" be recorded does not encompass bench conferences, which do not satisfy the materiality requirements of La.C.Cr.P. art. 843. Id.
Defendant references ten bench conferences that occurred off-the-record. However, the defendant has not demonstrated any specific prejudice that he suffered as a result of those conferences not being transcribed; nor does anything in the record suggest that such conferences had any impact on the proceedings. See State v. Deruise, 98-0541 at p. 15, 802 So.2d at 1236-37. Thus, there is no error in the failure of the trial court to have such bench conferences recorded. While we acknowledge Deruise, we opine that the better practice by the trial court would be to put all bench conferences on the record. Failure to do so might result in serious evidentiary and procedural issues.
Defendant's final assertion that his record is incomplete concerns the fact he did not have access to two letters written by his co-defendant White to the prosecutor; nor did he have access to White's December 17, 1997 statement to authorities. Initially we note that neither of these items was introduced as evidence in support of the case against defendant. As a result, there is no showing such documents meet the "materiality" requirements of article 843. As an appellate court, we have no authority to receive or review evidence not contained in the record. However, if defendant is seeking to prove *673 the state failed to provide him with exculpatory information in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or that he had ineffective assistance of counsel, his proper remedy is by post-conviction relief, wherein an evidentiary hearing could be conducted if necessary.[5]State v. Trahan, 93-1116, pp. 27-28 (La.App. 1 Cir. 5/20/94), 637 So.2d 694, 709.
This assignment of error lacks merit.

CONFIDENTIAL INFORMANT
In his seventh assignment of error, defendant argues the trial court committed reversible error by allowing the introduction of information regarding a confidential informant, who participated in at least one illegal transaction in this case, whose reliability was never established, and whose identity was never disclosed.
As a general rule, the state is allowed to withhold the identity of an informer from the accused. The defendant bears the burden of demonstrating exceptional circumstances pertaining to his defense before disclosure is required. Discretion is vested in the trial court to determine when disclosure is proper. Disclosure of the name of the confidential informant will be ordered when the prosecution's case shows that the informer, cooperating with the police, participated in the crime. State v. Washington, 93-2221, p. 3 (La.App. 1 Cir. 11/10/94), 646 So.2d 448, 451.
The record reflects that a confidential informant (CI) introduced Trooper Paul to White, who eventually contacted defendant regarding the sale of heroin. The record also indicates that the CI was present at the September 11, 1997 transaction, but there is nothing to indicate the CI had any greater involvement in the transaction other than being present in Trooper Paul's vehicle when the transaction took place. Moreover, we note that the September 11, 1997 transaction is not the crime in which the defendant was charged or convicted. The record does not contain any evidence that the CI participated or was even present at the 21 November 6, 1997 transaction, which forms the basis for this offense. Accordingly, we find this assignment of error without merit.

REMARKS BY PROSECUTOR
In his eighth assignment of error, the defendant argues that certain remarks by the prosecutor were improper and prejudicial. Specifically, defendant objects to the prosecutor's remarks to the prospective jurors that his wife was a police officer who taught in the D.A.R.E. program; the prosecutor's comment during opening statement that the statute for distribution of heroin carried a life sentence but did not prohibit parole; and during closing argument the prosecutor referred to the societal problems of heroin.
Defense counsel failed to object to the remarks by the prosecutor during voir dire, nor were there any objections lodged regarding the prosecutor's reference to the penalty for distribution of heroin. Where a defendant does not object to remarks by the prosecutor, ask for an admonition, or move for mistrial, he cannot raise such issues on appeal. State v. Gomez, 433 So.2d 230, 240-41 (La.App. 1st Cir.), writs denied, 440 So.2d 730, 441 So.2d 747 (La.1983). Accordingly, these portions of the assignment of error are not preserved for appellate review.
Defendant asserts that the prosecutor made a "sermon" about heroin during his closing argument. Defense counsel moved *674 for a mistrial during the prosecution's closing argument on the basis that such comments to the jury were inflammatory. The trial court denied the motion for mistrial.
Louisiana Code of Criminal Procedure Article 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
A conviction will not be reversed due to an improper remark during closing argument, unless the court is convinced that the remark influenced the jury and contributed to the verdict. Much credit should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence, heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence. State v. Mitchell, 94-2078, p. 11 (La.5/21/96), 674 So.2d 250, 258, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996).
Our review of the prosecutor's closing argument reveals that the prosecutor mentioned that the legislature can only pass laws and "stomp out this problem with heroin[,]" which counsel pointed out had begun in the 1960's. At that point, defense counsel lodged an objection. Following the trial court's denial of the motion for mistrial, the prosecutor did not make any other reference to any societal problems caused by heroin. We disagree with defendant's characterization of the prosecutor's remarks as a "sermon" on the societal problems caused by heroin. Rather, the prosecutor made a general reference to the time that the heroin problem historically evolved. Considering the record, we cannot say such a reference influenced the jury's verdict.
This assignment of error is without merit.

ALLEGED DISCOVERY VIOLATIONS
In his ninth assignment of error, defendant argues the state failed to disclose two letters written by White to the prosecutor until jury selection was completed on September 21, 1999. In providing the letters, the prosecutor explained that during voir dire, in the raising of the entrapment defense, he made copies of the unsolicited letters for defense counsel. The letters were sent in March and April of 1999, apparently requesting leniency. The prosecutor indicated the state had no intention of using the letters until the defense of entrapment came up. The prosecutor denied contacting White or attempting to elicit information from him.
Following defendant's objections regarding the failure of the state to provide the letters and whether the state should be allowed to use the letters, the trial court took the matter under advisement. However, the record does not reflect the trial court ever ruled on the admissibility of these letters. The letters were never used during the trial and are not part of the record.
As previously indicated, if defendant is raising the failure of the state to provide exculpatory material under Brady v. Maryland, supra, the proper vehicle to raise such an issue is through an application for post-conviction relief.[6]State v. Trahan, 93-1116 at p. 28, 637 So.2d at 709.
*675 This assignment of error is without merit.

EXCESSIVE SENTENCE
In his eleventh assignment of error, defendant argues that his sentence of life imprisonment is excessive. At the time of this offense in 1997, the penalty for distribution of heroin was mandatory life imprisonment at hard labor without benefit of probation or suspension of sentence, and a fine of not more than fifty thousand dollars. La. R.S. 40:966 B(1). Following his conviction of distribution of heroin, defendant was sentenced to life imprisonment without benefit of probation or suspension of sentence. However, the record does not contain a motion to reconsider sentence or evidence that defendant orally moved for reconsideration of sentence. The failure to file or make a motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See La.C.Cr.P. art. 881.1 D. Thus, defendant is procedurally barred from having the assignment of error reviewed. State v. Duncan, 94-1563, p. 2 (La.App. 1 Cir. 12/15/95), 667 So.2d 1141, 1142-43 (en banc per curiam).
This assignment of error is without merit.

CUMULATIVE EFFECT OF ERRORS
In his final assignment of error, defendant argues that he is entitled to a reversal of his conviction as a result of the cumulative prejudicial effect of all the assigned errors. This court has found no substantial or prejudicial errors; therefore, this argument is rejected.

CONCLUSION
Kenneth Dilosa's conviction and sentence are affirmed for the reasons assigned.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] A bundle of heroin usually consists of 25 bindles, which are the individual dosage units, each with a street value of $20-25.
[2] Although defendant argues the state failed to arraign defendant for eight months, we note defendant was not indicted for the present offense until June 18, 1998, and that his incarceration prior to that time was for different charges.
[3] The defendant would have to satisfy the requirements of La.Code Crim. P. art. 924, et seq., in order to receive such a hearing.
[4] See La.C.Cr.P. art. 924, et seq.
[5] See La.C.Cr.P. art. 924, et seq.
[6] See La.C.Cr.P. art. 924, et seq.