# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 KA 0801

STATE OF LOUISIANA

VERSUS

RONALD ALLEN

Judgment Rendered: __APR 1 9 2024__

* * * * * *

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket No. 2001259

Honorable Erika W. Sledge, Judge Presiding

* * * * * *

Bertha M. Hillman
Covington, Louisiana

Counsel for Defendant/Appellant
Ronald Allen


Scott M. Perrilloux
District Attorney
Amite, Louisiana
-and-
Angel M. Monistere
Matthew S. Belser
Assistant District Attorneys
Amite, Louisiana
-and-
Jeanne Rougeau
Assistant District Attorney
Livingston, Louisiana

Counsel for Appellee
State of Louisiana

* * * * * *

**BEFORE: McCLENDON, HESTER, AND MILLER, JJ.**

**McCLENDON, J.**

The defendant, Ronald Allen, was charged by bill of information with one count of sexual battery of a victim who either is infirmed, or is sixty-five years of age or older, in violation of LSA-R.S. 14:43.1(A)(3)(b). The defendant pled not guilty. The defendant represented himself at trial, and was found guilty as charged by a unanimous jury. No post-trial motions were filed. The trial court sentenced the defendant to imprisonment at hard labor for ninety-nine years, with the first fifty years to be served without benefit of parole, probation, or suspension of sentence. The defendant did not file a motion to reconsider sentence. The defendant now appeals, claiming the trial court erred in denying a motion *in limine*.[1] For the following reasons, we affirm the defendant's conviction and sentence.

## STATEMENT OF FACTS

S.R. was the granddaughter of the victim, C.A.[2] Around 2019, S.R. began noticing that her eighty-three-year-old grandmother was experiencing memory loss and confusion. S.R. eventually became C.A.'s primary caregiver. In order to protect and monitor C.A., who continued to live alone in her home, S.R. installed several surveillance cameras in C.A.'s home. S.R. was able to access and view the footage from the surveillance cameras from an application on S.R.'s phone. S.R. would check on C.A. periodically throughout the day and when the application sent notifications to alert her to loud noises or movements within C.A.'s home.

On March 14, 2020, around 2:00 p.m., S.R. received a notification from the surveillance camera system regarding movement within C.A.'s house. When S.R. opened the application, she observed a man "going into the washroom to get the lawn mower." S.R. did not recognize the individual. She called C.A., who assured S.R. that the man was

---

[1] On appeal, the defendant refers to the trial court's denial of his motion to suppress. However, the pleading at issue was not captioned as a motion to suppress, but as a motion *in limine*. Louisiana courts look beyond the caption, style, and form of pleadings to determine from the substance of the pleadings the nature of the proceeding; thus, a pleading is construed for what it really is, not for what it is erroneously called. **Scott v. Hogan**, 2017-1716 (La.App. 1 Cir. 7/18/18), 255 So.3d 24, 28, n.4. In this matter, the pleading at issue sought to exclude from trial five still shot photographs taken from a video surveillance recording on the basis that the photographs purportedly violated the Louisiana Code of Evidence. Accordingly, it appears that the pleading was properly captioned, and is properly characterized, as a motion *in limine*.

[2] As the charged crime is a sex offense, we will refer to the victim and immediate family members by their initials only. See LSA-R.S. 46:1844(W).

2

"the neighbor across the street on the corner[,]" "[he] wanted to borrow the mower[,]" and "[he] said [he] will bring it back later." Later, around 4:00 p.m., S.R. again received alert notifications and opened the surveillance camera system application. S.R. observed, in "real time[,]" as the same man returned the lawnmower to C.A.'s home and then followed C.A. into her home and, eventually, into a guest bedroom. S.R. heard the man instruct C.A. to sit on the bed. S.R. then observed him, without any clothes on, removing C.A.'s underwear, to which C.A. objected, "no, don't take my underwear off." S.R. heard the man respond, "oh, I'm not[.]" S.R. then observed the man as he turned C.A. around, laid her across the bed, "got behind her[,]" and "appeared to be penetrating [C.A.]" At this point, the two were on the bed and out of camera view, but S.R. continued to hear C.A. say, "no, stop, that hurts[,]" and the man reply, "I'm almost done."

While watching this encounter on her phone's application, S.R. called 911. She then began driving to C.A.'s home. While on the phone with law enforcement, S.R. stopped *en route* to send screenshot photographs from the surveillance video to law enforcement so they would be able to identify the man. Upon S.R.'s arrival to C.A.'s home, the man, later identified in-court as the defendant, was already in law enforcement custody. Upon arriving at C.A.'s home, S.R. provided a statement to law enforcement and re-watched the surveillance video with law enforcement in their presence. During trial, S.R. positively stated that she saw the defendant on her surveillance camera system, she saw him undressed, and that he "started to have sex with [C.A.]"

## MOTION IN LIMINE

Prior to trial, the defendant filed a motion *in limine*[3] seeking an order prohibiting the State from introducing any still shot images taken from the camera surveillance system application on S.R.'s phone. The defendant argued, "[t]he still shots are from a video not available to be viewed in [its] entirety by the defense, which runs counter to

---

[3] The defendant actually filed two identically worded motions *in limine* on separate dates: August 25, 2021 and September 13, 2021. Although two sets of still shot photographs were taken, printed, and introduced at trial – one set from inside C.A.'s home and another outside C.A.'s home – it is unclear whether the two motions *in limine* were intended to address each set of still shots. However, on appeal, the defendant focuses his argument on the still shot photographs taken while he was inside C.A.'s home.

3

best evidence rules and traditions." The defendant further argued the still shots could not be reviewed or authenticated. During a subsequent pre-trial hearing, the State argued:

> That surveillance video captured the defendant inside the home, and captured shots of him completely nude inside her home. Now, because of either proprietary reasons or faulty software or whatever, TPSO has spent numerous months trying to get the surveillance program downloaded but was unable to do so. They sent it to other experts trying to get it done, and they just were not able to do so.
>
> As far as any constitutional issues, the State has made every effort it could to get a copy of the video to provide both to the Defense and to use at trial. It's just unavailable at this point.
>
> What they were able to do is they were able to play it at least once to – or I think, if my understanding is correct, the victim was able to take snapshots from the video and then provided that to TPSO. The State intends to use those screenshots or those snapshots of the video that [were] provided by the victim's daughter or granddaughter, the victim's family, at trial.

The trial court took the matter under advisement, later ruling the still shots could be admissible at trial, provided the State properly authenticated them through witness testimony.

In his sole assignment of error, the defendant argues the trial court erred in denying his motion *in limine*, claiming, "[t]he still shots of [him] and [C.A.] were taken from video surveillance which had been compromised and could no longer be viewed. They are not originals or admissible duplicates and did not provide a reliable depiction of the entire incident." The defendant admits, "[w]hile the photographs here are an accurate representation of [him] and [C.A.]," he further argues, "they are not an accurate depiction of what occurred in the house because they provided only partial views of [him] and [C.A.] and large segments of the video which were not downloaded could not be viewed." Therefore, although the defendant does not contest his identity as the perpetrator of the crime, or the sufficiency of the evidence presented against him at trial, the defendant calls for a new trial in light of this allegedly "unfair" evidence used against him.

Unless otherwise provided by legislation, Louisiana Code of Evidence article 1002 requires that in order "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required[.]" Nevertheless, a duplicate is admissible to the same extent as an original unless a genuine question is raised as to the

4

authenticity of the original, or under circumstances in which it would be unfair to admit the duplicate in lieu of the original. See LSA-C.E. art. 1003(1) and (2). Lastly, Louisiana Code of Evidence article 1004(1) provides that an "original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if [...] [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]" Moreover, this court has held that when a mechanical reproduction of the original is offered into evidence and is the substantial equivalent of the original, admission over objection is reversable only upon a showing that the content of the purported copy does not accurately reflect that of the original. **State v. Wise**, 2009-1753 (La.App. 1 Cir. 5/7/10), 2010 WL 1838403, *8 (unpublished), writ denied, 2010-1324 (La. 1/7/11), 52 So.3d 884, citing **State v. Spradley**, 97-2801 (La.App. 1 Cir. 11/6/98), 722 So.2d 63, 71, writ denied, 99-0125 (La. 6/25/99), 745 So.2d 625. As a general rule, deferential standards of review apply to factual and other trial court determinations, while determinations of law are subject to *de novo* review. See **State v. Bartie**, 2019-01727 (La. 9/9/20), 340 So.3d 810, 816 (*per curiam*). Questions of admissibility of evidence are discretion calls for the trial court and should not be overturned absent a clear abuse of that discretion. **State v. Guzman**, 2022-0502 (La.App. 1 Cir. 11/17/22), 356 So.3d 1092, 1100, writ denied, 2022-01821 (La. 5/31/23), 361 So.3d 463.

During trial, Deputy Daniel Hernandez with the Tangipahoa Parish Sheriff's Office testified he responded to the 911 call placed by S.R. Deputy Hernandez spoke with S.R. when she arrived at C.A.'s house, and S.R. explained the surveillance cameras set up in C.A.'s house and the application she used to view the recordings. Deputy Hernandez then viewed the surveillance footage on S.R.'s phone. The State presented Deputy Hernandez with a printout containing five still shots S.R. sent directly from her phone to law enforcement. Deputy Hernandez testified the five still shots accurately reflected the video surveillance footage he observed on S.R.'s phone and did not appear to be altered in any way, particularly since S.R.'s phone information remained on the photographs. Deputy Hernandez then explained each photograph, noting they depicted the defendant entering C.A.'s home and grabbing C.A., and that both the defendant and C.A. appeared in various

5

stages of undress. Ultimately, the still shots were filed and introduced into the evidentiary record without objection.

Accordingly, we find the five still shots taken from S.R.'s phone were properly authenticated through Deputy Hernandez's testimony. See **Guzman**, 356 So.3d at 1100 ("For admission, it suffices if the custodial evidence establishes that it was more probable than not that the object is the one connected to the case. A preponderance of the evidence is sufficient."). The still shots provided a fair and accurate depiction of what the surveillance camera system captured on the day in question. Although the defendant claims they are not an accurate representation "because they provided only partial views of [the defendant and C.A.] and large segments of the video which were not downloaded could not be viewed,[]" we disagree. Moreover, there has been no allegation by the defendant that the entire video recording was destroyed or otherwise lost in bad faith.

Accordingly, we find the trial court did not abuse its discretion in denying the defendant's motion *in limine*. This assignment of error lacks merit.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED.**